## DORIS B. LUMAN,[1] PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3121–79.     Filed November 18, 1982.

---

[1]The Commissioner issued his statutory notice of deficiency to both Robert B. Luman and Doris B. Luman. However, Robert B. Luman died prior to the mailing of this notice of deficiency. Doris filed the petition in this case as "Doris B. Luman, Individually and as Surviving Spouse of Robert B. Luman, Deceased." The Commissioner subsequently filed a motion to dismiss for lack of jurisdiction as to Doris B. Luman as Surviving Spouse of Robert B. Luman, Deceased, and to change the caption, alleging that there was no indication that Doris Luman had been duly appointed as the executrix or personal representative of the Estate of Robert B. Luman, Deceased. On this basis, the Commissioner argued that no authorized person had timely filed a petition on behalf of the Estate of Robert B. Luman. After due consideration, the Court granted this motion.

*Myles J. Dolan*, for the petitioner.
*Donald T. Rocen*, for the respondent.

SIMPSON, *Judge*: The Commissioner determined the following deficiencies in, and additions to, the petitioner's Federal income taxes: [2]

|  |  | *Addition to tax sec. 6653(a), I.R.C. 1954*[3] |
| --- | --- | --- |
| *Year* | *Deficiency* |  |
| 1974 | $6,393.21 | $319.66 |
| 1975 | 3,245.34 | 160.47 |
| 1976 | 6,345.07 | 315.96 |

The issues for decision are: (1) Whether the income reported by a family trust created by Robert Luman is taxable to the petitioner, individually; (2) whether the petitioner is entitled to deduct under section 212 the expenses of establishing the family trust; and (3) whether the petitioner is liable for the addition to tax under section 6653(a) for negligence.

FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioner, Doris B. Luman, was a legal resident of Wyoming at the time she filed the petition in this case. She and her husband, Robert B. Luman, filed joint Federal income tax returns for the years 1974, 1975, and 1976 with the Internal Revenue Service, Ogden, Utah.

The petitioner and her husband, who died on March 31, 1978, were, for many years prior to 1974, engaged in ranching in Sublette County, Wyo. They conducted their ranching activities on property (the ranch) which Robert Luman's

---

[2]These deficiencies and additions to tax were determined against the petitioner because she and her husband filed jointly during the years at issue.

[3]All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue, unless otherwise indicated.

father acquired in 1904. This ranch was originally a part of the elder Luman's property, which included eight other ranches in Utah and Wyoming. At the time of the elder Luman's death, these other properties went to the elder Luman's other sons and daughters. These other properties have since been transferred out of the family so that by 1974 the only remaining family ranch was the ranch owned and operated by Robert and Doris Luman.

Mr. Luman wanted to retire from the ranching business. The Lumans consulted with their attorney, sometime prior to 1974, for his assistance in ensuring that this last Luman ranch remain within the family as long as possible. The attorney presented the Lumans with a proposal wherein the ranch would be placed in a trust with himself as the manager. For his services, the attorney would charge a fee of 20 to 25 percent of the income from the trust. The Lumans considered this fee to be exorbitant and rejected the proposal.

Subsequently, the Lumans' next-door neighbors approached them with an offer to purchase their ranch. The offer was made through a certified public accountant who did work for both the Lumans and their neighbors. The Lumans rejected this offer because they wanted to keep the ranch within the family as long as possible.

On April 19, 1974, the Lumans were visited by two men, Logan Barclay and Frank Carnefix, who were representatives of Educational Scientific Publishers (ESP). Mr. Barclay and Mr. Carnefix sought to persuade the Lumans to establish a family trust, using forms provided by ESP. The Lumans saw this proposal as an opportunity to ensure the "orderly transfer of [their] assets to * * * [their] children when * * * [they] should be gone," and for such reason, the Lumans accepted the ESP proposal. The ESP family trust documents are drawn with a purpose of shifting the incidence of taxation from the grantor to the trust, but the discussions between the Lumans and the representatives of ESP included no discussions about taxes. The Lumans did not consult with an attorney before deciding to accept the ESP proposal because they lacked respect for attorneys as a result of their prior experience with attorneys.

The ESP family trust plan used by the Lumans involved the creation of two trusts: the Robert B. Luman Educational Trust

(the educational trust) and the Robert B. Luman Family Estate (A Trust) (the family trust). On April 20, 1974, Robert Luman executed a declaration of trust by which he, as grantor, created the educational trust. The purpose of this trust was to provide the Lumans with information regarding the establishment and operation of the family trust. The trustees of the educational trust were the two representatives of ESP, Mr. Barclay and Mr. Carnefix. The Lumans paid this trust $20,000. The payment was, in effect, the fee charged by ESP for its assistance in establishing the family trust. Such assistance included the furnishing of forms for establishing the trust and advice from a lawyer, Paul Wright, and a CPA concerning the conduct of the trust as it related to the Lumans' business affairs. However, the Lumans received no legal advice in establishing the trust; in fact, they received no legal advice concerning the trust until 1976. The educational trust is no longer in existence.

On May 13, 1974, Robert Luman executed a declaration of trust creating the family trust. The original trustees of the family trust were Doris B. Luman and Hazel Werner, a person unrelated to the Lumans. The declaration of trust gave the trustees the power to distribute "proceeds and income" in the trustees' unlimited discretion. The trust instrument also provided that a majority of all trustees was needed to constitute a quorum and to take any affirmative action. The trust instrument gave the trustees extremely broad powers respecting the trust property and the carrying on of any business. The trustees could amend the trust instrument by resolution "covering contingencies as they arise," and the minutes of the trustees' resolution authorizing any action were to be considered evidence that such an action was within their power. Finally, the trust instrument expressly declared "neither The Trustees, officers, or certificate holders, present or future, have or possess any beneficial interest in the property or assets of Said Trust." The certificates representing units of beneficial interest in the trust also expressly stated that "This certificate conveys no interest of any kind in The Trust assets, management, or control thereof."

At the first meeting of the board of trustees of the family trust, held on June 25, 1974, Robert Luman was appointed a trustee of the family trust for life. He received a certificate

representing all 100 beneficial units of the family trust. By quitclaim deeds and other documents, the Lumans transferred virtually all of their property to the family trust. This property consisted of the ranch, such non-income-producing property as the family residence and its furniture and fixtures, and a number of stocks, bonds, and Treasury notes. However, the Lumans retained as their own property two automobiles, which they subsequently leased to the trust, but which they continued thereafter to use for both business and personal purposes. Both Robert Luman and the petitioner also transferred to the family trust the exclusive use of their lifetime services and any income therefrom. The Lumans had not received any such income in the recent past, and they did not anticipate receiving any in the future. Neither Robert Luman nor the petitioner received any income from personal services performed for anyone other than the trust in 1974, 1975, or 1976.

On June 26, 1974, the certificate evidencing Robert Luman's ownership of all 100 units of beneficial interest in the family trust was canceled. On the same day, Robert Luman and the petitioner each received a certificate representing 50 units of beneficial interest in the family trust. On the next day, Hazel Werner, an original trustee, resigned, and she was replaced by a daughter of the Lumans, Roberta Luman Bacheller (the daughter), in July 1974. In November 1974, Robert Luman and the petitioner had their certificates of beneficial interest canceled. Robert Luman then received a new certificate representing 20 units of beneficial interest; the petitioner received a certificate representing 35 units; and each of the Lumans' three children received a certificate representing 15 units of interest. These children were all adults and were not dependent on Mr. Luman and the petitioner.

After the creation of the family trust, the Lumans operated the ranch in generally the same manner as they had prior to the creation of the trust. The trustees passed resolutions authorizing Robert Luman to manage the ranch and to invest trust income in stocks using his best discretion. The Lumans, as the trustees, prepared and executed minutes of their meetings in which they meticulously recorded their consideration and approval of investments and capital expenditures for the ranch and recorded their other decisions relating to the

investments of the trust and the management of the ranch. The minutes also reflect a decision by the trustees to purchase a new refrigerator for the residence, but it is not clear who paid for such refrigerator. Nevertheless, the Lumans continued to make decisions together as they had done prior to the creation of the trust. The daughter rarely attended the trustees' meetings, although she communicated with the petitioner weekly by letter and telephone regarding important ranch matters. The petitioner and the daughter occasionally overruled Mr. Luman regarding decisions to be made in managing the ranch.

The family trust filed fiduciary income tax returns for 1974, 1975, and 1976, and on such returns, it reported all income earned from assets transferred to the trust by the Lumans. It also deducted all expenses connected with the operation of the ranch, including the costs of leasing and maintaining the automobiles leased from the Lumans and the consulting fees paid to them.

The family trust reported the following amounts for its first 6 months of operations (July 1 through December 31 in 1974) and for 1975 and 1976:

|  | 1974 | 1975 | 1976 |
| --- | --- | --- | --- |
| Dividends | $8,348.75 | $19,528.50 | $20,393.50 |
| Interest | 1,890.00 | 3,625.40 | 3,578.60 |
| Capital gains | 1,012.00 | 4,781.47 | 59.45 |

The trust utilized the accrual method of reporting its farm income, employing inventories in its computation. It sold no livestock in 1974. During 1975, the trust lost or consumed 9 cows, raised 117 calves and 2 horses, and sold 31 cows, 60 calves, and 2 horses. These livestock operations produced gross receipts of $10,566.39. During 1976, the trust lost 4 cows and 3 calves, raised 98 calves, and sold 67 yearlings, all of which produced gross receipts of $22,662.25.

The income of the family trust was distributed to the holders of the beneficial units in accordance with their interests in the trust. The petitioner and her husband reported their share of this distributed income on their Federal income tax returns for 1974, 1975, and 1976. In addition, for 1975 and 1976, they reported as income consulting fees of $3,000 received from the trust each year. These fees were paid for Mr. Luman's

managing the ranch. Finally, on their 1974 return, the Lumans deducted the $20,000 paid to ESP through the educational trust.

In his notice of deficiency, the Commissioner determined that all the income reported by the trust in 1974, 1975, and 1976 was includable in the income of Robert Luman and the petitioner for those years. The Commissioner removed the consulting fees of $3,000 from their taxable income for 1975 and 1976 because he included in their taxable income all trust income for those years. For 1974, the Commissioner disallowed the deduction taken by the Lumans for the payment to ESP on the grounds that the Lumans did not establish that this item was an expense of carrying on a trade or business or an expense incurred for the production of income. Finally, the Commissioner determined additions ·to tax for each year pursuant to section 6653(a) for negligence or intentional disregard of rules and regulations.

## OPINION

This case represents another in a long series of cases arising out of the sale of "canned" trusts by ESP and similar organizations.[4] Although the Lumans created the family trust for legitimate estate planning reasons, the arrangement has raised several tax questions. Once again, we direct our attention to them.

The first issue for decision is whether the income generated by the trust property is taxable to the Lumans individually or to the trust they created. The petitioner maintains that the income from the trust property is taxable to the trust and to its beneficiaries as distributed, that the facts of this case are unique, and that because of such facts, this trust is distinguishable from the many family trusts which have been held ineffective to shift the burden of Federal income taxation. See,

---

[4]*Schulz v. Commissioner*, 686 F.2d 490 (7th Cir. 1982), affg. a Memorandum Opinion of this Court; *Horvat v. Commissioner*, 671 F.2d 990 (7th Cir. 1982), affg. per curiam a Memoran- dum Opinion of this Court; *Gran v. Commissioner*, 664 F.2d 199 (8th Cir. 1981); affg. a Memorandum Opinion of this Court; *Vnuk v. Commissioner*, 621 F.2d 1318 (8th Cir. 1980), affg. a Memorandum Opinion of this Court; *Epp. v. Commissioner*, 78 T.C. 801 (1982); *Contini v. Commissioner*, 76 T.C. 447 (1981); *Vercio v. Commissioner*, 73 T.C. 1246 (1980); *Markosian v. Commissioner*, 73 T.C. 1235 (1980); *Wesenberg v. Commissioner*, 69 T.C. 1005 (1978).

e.g., *Schulz v. Commissioner*, 686 F.2d 490 (7th Cir. 1982), affg. a Memorandum Opinion of this Court. On the other hand, the Commissioner maintains that the income from the trust property is taxable to the petitioner individually for three alternative reasons: (1) Because the trust has no economic substance; (2) because the trust effects an anticipatory assignment of income; and (3) because of the applicability of the grantor trust provisions of sections 671 through 677. We will first consider the Commissioner's argument under the grantor trust provisions.

When the grantor of a trust retains any of the powers described in sections 673 through 677, he is treated, for income tax purposes, as the "owner" of that portion of the trust over which the power extends. Where the grantor is so treated, section 671 includes in his income "those items of income, deductions, and credits against tax of the trust which are attributable to that portion of the trust to the extent that such items would be taken into account * * * in computing taxable income or credits against the tax of an individual." Secs. 1.671-2, 1.671-3, Income Tax Regs. These provisions apply if their conditions are met, regardless of the existence of a bona fide non-tax reason for creating the trust. One of the retained powers which will trigger the operation of the grantor trust provisions is contained in section 677.

Section 677 provides, in part:

SEC. 677. INCOME FOR BENEFIT OF GRANTOR.

(a) GENERAL RULE.—The grantor shall be treated as the owner of any portion of a trust, * * * whose income without the approval or consent of any adverse party is, or, in the discretion of the grantor or a nonadverse party or both, may be—

(1) distributed to the grantor or the grantor's spouse; [or]

(2) held or accumulated for future distribution to the grantor or the grantor's spouse; * * *

The declaration of trust executed by Robert Luman gave the trustees of the family trust the power to distribute income in their discretion. Nothing in the trust declaration prevented the trustees from distributing income to Robert Luman or his spouse, the petitioner. Accordingly, if such discretion was exercisable without the approval or consent of an adverse party, section 677 operates to cause this income to be taxable

to Robert Luman and, by virtue of the election by the Lumans to file a joint return, to the petitioner. Sec. 6013(d)(3).

Section 672 defines an "adverse party" for the purposes of section 677 as "any person having a substantial beneficial interest in the trust which would be adversely affected by the exercise ,or nonexercise of the power which he possesses respecting the trust." The trust declaration provided that the trustees could make decisions by majority vote. During the years in issue (except for the first 2 months of the trust's existence), the trustees were Robert Luman, the petitioner, and the daughter. From November 1974 through 1976, each trustee also held units of beneficial interest in the trust. Thus, it might appear that each trustee was an adverse party regarding distributions to any other trustee.[5] However, for the reasons set forth hereinafter, we conclude that the petitioner and Robert Luman were not adverse parties regarding distributions to each other.

Section 677 was expanded by the Tax Reform Act of 1969, Pub. L. 91–172, sec. 332, 83 Stat. 599, to provide that the grantor is to be treated as the owner of any portion of a trust whose income could, in the discretion of the grantor or a nonadverse party or both, be distributed to, or accumulated for, the grantor's spouse. In light of this statutory change, we found in *Vercio v. Commissioner*, 73 T.C. 1246, 1258 (1980), that "Congress effectively ruled out the possibility of a spouse being treated as an adverse party when a provision in the trust allows for the income to be used for that spouse's benefit." See sec. 1.677(a)–1(b)(2), Income Tax Regs. The petitioner can hardly be considered adverse regarding distributions for her benefit. *Vercio v. Commissioner, supra* at 1258; sec. 1.672(a)–1(a), Income Tax Regs. In this case, the grantor, Robert Luman, and a nonadverse party, the petitioner, constituted two-thirds of the trustees and thus had the power to distribute income to either or both of them without the daughter's consent. Accordingly, by virtue of sections 671 and 677, the income from the trust property is taxable to the grantor

---

[5]The declaration of trust creating the family trust and the certificates of beneficial interest in such trust both contained statements indicating that the certificate holders did not have a beneficial interest in the trust. Nevertheless, the Lumans treated such certificate holders as having beneficial interests in the trust, and for purposes of this discussion, we will do the same.

individually (see *Schulz v. Commissioner, supra; Vercio v. Commissioner, supra; Wesenberg v. Commissioner,* 69 T.C. 1005 (1978)) and to the petitioner because they elected to file joint returns. This holding makes it unnecessary to consider the Commissioner's other arguments.[6]

The second issue for decision is whether the petitioner is entitled to a deduction for the $20,000 that she and her husband paid to ESP in connection with the creation of the family trust in 1974. She contends that this fee is deductible under section 212 or 165. The Commissioner argues that the trust was created solely for personal reasons and that the fee is a nondeductible personal expense. Sec. 262. The petitioner has the burden of proving that she is entitled to the deduction. Rule 142(a), Tax Court Rules of Practice and Procedure;[7] *Welch v. Helvering,* 290 U.S. 111 (1933). We will consider the petitioner's argument under section 212 first.

Section 212(2) allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year for the management, conservation, or maintenance of property held for the production of income. The petitioner contends that the $20,000 payment to ESP was incurred to manage, conserve, or maintain the Lumans' ranch and their securities.

The deduction provided by section 212(2) is limited in application: An expenditure is not deductible under such section if it is incurred with respect to property that is not held for the production of income. Sec. 1.212–1(h), Income Tax Regs.; *Contini v. Commissioner,* 76 T.C. 447, 452–453 (1981). Also, an expenditure is not deductible under section 212(2) if it is a personal, living, or family expense which is nondeductible pursuant to section 262. Secs. 1.211–1, 1.212–1, Income Tax Regs. In *Epp v. Commissioner,* 78 T.C. 801 (1982), this Court recently held that the expense of creating a similar family trust was a personal expense not deductible under section 212(2).

In *Epp,* the taxpayer was concerned with protecting her

---

[6]Throughout this opinion, we have for convenience referred to the arrangement established by the Lumans as a trust. However, we do not mean to imply that the arrangement did in fact create a trust since we have not reached the Commissioner's alternative arguments and do not express any opinion regarding them.

[7]All references to a Rule are to the Tax Court Rules of Practice and Procedure.

interest in property, some of which may have been income-producing property, and ensuring that such property would pass to her sisters upon her death without diminution by reason of probate and related expenses. She sought to deduct under section 212(2) the cost of the materials and services used to create the trust, including legal and accounting services and tax advice. In determining what a taxpayer must show to qualify for a deduction under section 212(2), we said:

advice on merely how to rearrange title to income-producing property relates to neither the management nor the conservation of such property within the meaning of section 212. See *Schultz v. Commissioner*, 50 T.C. 688, 699–700 (1968), affd. per curiam 420 F.2d 490 (3d Cir. 1970); *Bagley v. Commissioner*, * * * [*Bagley v. Commissioner*, 8 T.C. 130, 135 (1947).]

    *   *   *   *   *   *   *

We have held that amounts paid for advice with respect to planning one's personal and family affairs, such as establishing trusts for family members or making gifts, are nondeductible personal expenditures within the meaning of section 262. *Mathews v. Commissioner*, 61 T.C. 12, 27 (1973), revd. on another issue 520 F.2d 323 (5th Cir. 1975); *Cobb v. Commissioner*, 10 T.C. 380, 383 (1948), affd. 173 F.2d 711 (6th Cir. 1949); *Bagley v. Commissioner, supra.* * * *
* * * Moreover, the deduction under section 212(2) applies to expenditures for the protection or preservation of property itself, such as safeguarding or keeping it up, but not to the expenditures for a taxpayer's retention of ownership in it. *United States v. Gilmore*, 373 U.S. 39, 44 (1963); *Reed v. Commissioner*, 55 T.C. 32, 42 (1970). * * * [78 T.C. at 805–806; fn. ref. omitted.]

Thus, in *Epp*, we held that an expenditure for rearranging title to income-producing property, for planning one's personal and family affairs (such as establishing trusts for family members or making gifts), or for retaining ownership of property are not deductible under section 212(2) but are nondeductible personal expenditures within the meaning of section 262.

In *Bagley v. Commissioner*, 8 T.C. 130, 135 (1947), there was an expenditure for legal advice to review proposed estate plans. The plans proposed a substantial rearrangement and reinvestment of the taxpayer's entire estate of income-producing properties. The proposal included the creation of inter vivos trusts in which the taxpayer retained the income for life and the drafting of testamentary trusts. We analogized the expense to the cost of investment counsel, for which a deduction was, and is, allowable (sec. 1.212–1(g), Income Tax Regs.), and we held the expenditure deductible under the

predecessor of section 212(2). In the same case, we denied a deduction for the cost of legal advice received by the taxpayer concerning the creation of an inter vivos trust for the benefit of her daughter and the release of the taxpayer's powers of appointment. We said:

> We are unable to see what possible connection the disposition of part of petitioner's income-producing securities by way of gift in trust could have with the production or collection of income; nor do we think that it can properly be said to have a proximate connection with the management, conservation, or maintenance of such property. * * * [8 T.C. at 135.]

We believe that *Bagley* supports our holding in *Epp*. The deduction allowed in *Bagley* was generally for legal services in the nature of investment advice for the management of income-producing property; a deduction was expressly denied for advice concerning the advisable methods for making gifts of property. However, to the extent that *Bagley* is inconsistent with our later decision in *Epp*, *Bagley* will no longer be followed.

*Merians v. Commissioner*, 60 T.C. 187 (1973), also involved the question of the deductibility of the costs of developing an estate plan. In that case, the petitioners claimed a deduction under section 212(3) for the costs of the tax advice received in developing such plan, but they did not claim a deduction under section 212(2) for the other legal services involved in developing such plan. Although there was a question as to the precise amount allocable to the cost of the tax advice, we were convinced that a significant portion of the payment was allocable to such advice, and hence, we allowed a deduction under section 212(3) for that amount. In *Epp*, the petitioner could not support a claim for a deduction for tax advice under section 212(3), and therefore, there is no inconsistency between our opinions in *Merians* and in *Epp*.

In this case, it is clear that the trust was created to serve the petitioner's purely personal objectives. The Lumans created the family trust in an attempt to retain their ranch in the family for as long as possible and to ensure "an orderly transfer of assets to our children when we should be gone." The Lumans were not influenced by business or tax considerations. They sought to achieve their goal by transferring most of their property, both income-producing and non-income-producing, to the trust. The purpose and effect of the trust are

the same as those encountered in *Epp*. Under these circumstances, we hold that the Lumans may not deduct under section 212(2) the cost of the ESP materials and assistance in creating the trust.

Moreover, the petitioner has not met her burden of proving that any portion of the expenditure was attributable to a cost other than the nondeductible cost of creating the trust. Rule 142(a); *Welch v. Helvering, supra*. The petitioner testified that the fee was payment for advice from an attorney and a CPA concerning the operation of the family trust as it related to the Lumans' ranching business. She also testified that the fee was paid to provide information regarding the management of the trust. This testimony is the only indication that the $20,000 fee, or any part of it, may have been paid for the management of the Lumans' income-producing property.

The petitioner's testimony concerning what she and her husband purchased with the fee is vague and is patently inconsistent with other evidence of record. It is clear that a portion of the fee must be allocated to nondeductible personal expenditures, such as to the cost of the forms used to create the trust, to the advice needed to complete such forms, and to determining which family members would receive an interest in the ranch and the share of each. Also, the ranch residence and its contents, which may have constituted a significant part of the property transferred to the family trust by the Lumans, were not income-producing property, but were used by the Lumans for personal purposes, and the portion of the fee attributable to the management, conservation, or maintenance of the personal residence is not deductible. Sec. 1.212–1(h), Income Tax Regs.; *Contini v. Commissioner*, 76 T.C. at 453. Therefore, it is highly questionable whether any substantial amount of the fee is attributable to an expenditure deductible under section 212(2).

In addition, there is no evidence showing whether the information which the Lumans were to receive concerning "trust management" related solely to the creation of the trust or to the management of trust assets. In fact, the Lumans continued to manage their business themselves, as they had prior to the creation of the trust. The petitioner and her husband, in occasional consultation with the daughter, made all investment and business decisions. What is more, they

received no legal or accounting advice until 1976, 2 years after they created the trust, and there is no evidence that this advice in any way concerned the management, conservation, or maintenance of the Lumans' income-producing property. In summary, to allow a deduction under section 212(2), it would be necessary to allocate the fee between the portions attributable to income-producing and non-income-producing properties and between the portions attributable to the management of the income-producing property and other portions attributable to other activities, including the creation of the trust. Such an allocation is impossible on the meager evidence in this record.

When a petitioner proves that some part of an expenditure was made for deductible purposes, and when the record contains sufficient evidence for us to make a reasonable allocation, we will do so. *Cohan v. Commissioner*, 39 F.2d 540 (2d Cir. 1930); *Merians v. Commissioner*, 60 T.C. at 189–190. In this case, all that the petitioner has shown is that some portion of the payment to ESP conceivably could have been attributable to the management of the Lumans' income-producing property. A deduction cannot stand on so flimsy a foundation. An allocation of any portion of the payment to a section 212(2) purpose would be speculative, amounting to "unguided largesse." *Williams v. United States*, 245 F.2d 559, 560 (5th Cir. 1957); *Epp v. Commissioner*, 78 T.C. at 807; see *Contini v. Commissioner*, 76 T.C. at 454; *Schultz v. Commissioner*, 50 T.C. at 700. Consequently, we hold that the petitioner is not entitled to deduct any portion of the $20,000 payment under section 212(2).

Nor is the petitioner entitled to deduct any portion of the fee under section 212(3). Such section permits a deduction for the ordinary and necessary expenses paid or incurred during the taxable year in connection with the determination, collection, or refund of any tax. Thus, expenses for tax counsel are deductible (sec. 1.212–1(l), Income Tax Regs.), and estate planning advice to reduce taxes may be deductible under section 212(3). *Epp v. Commissioner*, 78 T.C. at 805; *Merians v. Commissioner, supra.* However, the petitioner does not contend that payment of the $20,000 fee entitled the Lumans to receive any tax counsel, and the record contains no evidence indicating that any of the fee was paid for such purpose.

Indeed, the petitioner concedes that tax considerations in no way influenced the Lumans' decision to create the family trust. Hence, there is no basis for allowing a deduction under section 212(3). *Epp v. Commissioner, supra* at 805.

Finally, the petitioner contends that if the $20,000 fee is not deductible under section 212, then it is deductible as a theft loss under section 165. Section 165 allows a taxpayer to deduct, in the year the theft is discovered, uninsured losses in excess of $100 arising from the theft of property. Sec. 165(a), (c)(3), (e). It is well settled that whether there has been a theft loss within the purview of section 165(c)(3) depends upon the law of the jurisdiction where the loss was sustained. *Edwards v. Bromberg*, 232 F.2d 107, 111 (5th Cir. 1956); *Paine v. Commissioner*, 63 T.C. 736, 740 (1975), affd. without published opinion 523 F.2d 1053 (5th Cir. 1975); *Bellis v. Commissioner*, 61 T.C. 354 (1973), affd. 540 F.2d 448 (9th Cir. 1976); *Gerstell v. Commissioner*, 46 T.C. 161, 172 (1966); *Monteleone v. Commissioner*, 34 T.C. 688, 692 (1960). The petitioner has the burden of proving that the loss qualifies as a theft loss within the meaning of section 165(c)(3). Rule 142(a); *Welch v. Helvering, supra.* The petitioner introduced no evidence that would tend to establish that the transaction was anything other than it appeared to be: the sale of forms and assistance for creating the family trust.[8] The petitioner has not even attempted to demonstrate that the salesmen obtained the fee in a manner unlawful under Wyoming law. Therefore, we also hold that the petitioner is not entitled to deduct the $20,000 fee as a theft loss under section 165.

The final issue for decision concerns the additions to tax under section 6653(a). Section 6653(a) provides for an addition to tax if "any part of any underpayment * * * of any [income] tax * * * is due to negligence or intentional disregard of rules and regulations." The petitioner bears the burden of proving

---

[8] See *Gibson v. Commissioner*, T.C. Memo. 1982–374; *Brown v. Commissioner*, T.C. Memo. 1982–253. In *Nichols v. Commissioner*, 43 T.C. 842 (1965), we allowed a theft loss deduction for expenses incurred by the petitioners through their participation in a tax-avoidance scheme. However, that case is distinguishable from the present case in two respects: First, in *Nichols*, the petitioners proved that the promoter of the scheme did not execute the transactions for which they had bargained. 43 T.C. at 886. Second, the petitioners in *Nichols* alleged and proved numerous fraudulent misrepresentations by the promoter which induced the petitioners to participate in the scheme and which constituted crimes under applicable State and Federal law. 43 T.C. at 884–885.

that the additions to tax do not apply. Rule 142(a); *Bixby v. Commissioner*, 58 T.C. 757, 791 (1972). On this record, we find that the petitioner has failed to carry this burden, and we sustain the determination of the Commissioner as to the additions to tax. *Vnuk v. Commissioner*, 621 F.2d 1318, 1321 (8th Cir. 1980), affg. a Memorandum Opinion of this Court; *Vercio v. Commissioner*, 73 T.C. at 1259; *Wesenberg v. Commissioner*, 69 T.C. at 1015.

*Decision will be entered for the respondent.*

Reviewed by the Court.

NIMS, *J.*, concurring: While I fully agree with the result reached in this case, I do not fully agree with the route by which it was reached. I regard this case merely as one more routine family trust case, and as such do not view it as an appropriate vehicle for an extended reexamination of the deductibility of estate planning expenses. In particular, I do not agree with the mixed signals we are sending out regarding the continued efficacy of *Bagley v. Commissioner*, 8 T.C. 130 (1947).

FEATHERSTON, *J.*, agrees with this concurring opinion.

GOFFE, *J.*, concurring in part and dissenting in part: I respectfully dissent as to the second issue. In my view, the majority has failed to heed the admonition of Justice Frankfurter, "The baby is not to be thrown out with the bath." *International Salt Co. v. United States*, 332 U.S. 392, 405 (1947). I fully recognize the problems that have been created by what the majority describes as "canned" trusts sold by ESP and others. *Horvat v. Commissioner*, 671 F.2d 990 (7th Cir. 1982), affg. a Memorandum Opinion of this Court. Nevertheless, the instant case does not involve an attempt to tax income from personal services to a trust instead of taxing it to the true earner of the income. In its enthusiasm to deny the deduction for the $20,000 which petitioner and her husband paid for the

creation of the trust, the majority has seriously undercut the case law which permits deductions under section 212(2).

I was the trier of fact in this case. I agree with the findings of fact as stated by the majority but I do not agree with some of the inferences which it draws, and I strongly disagree with the manner in which the majority has applied the law.

The majority points out that petitioner received no legal advice regarding the trust until 1976. If this is interpreted to mean that petitioner received no advice from a lawyer until 1976, then it is correct. If, instead, it implies that petitioner and her husband received no advice as to the legal effect of having their property held in trust, then the inference is incorrect. As the majority points out, petitioner and her husband prepared and executed meticulous minutes of the meeting of the trustees. This fact demonstrates that they received considerable instructions on the law, the cost of which should be deductible as part of the cost of management, conservation, or maintenance of property held for the production of income. Petitioner, her husband, and their daughter carefully observed the legal distinctions brought about by the creation of the trust.

I strongly disagree with the legal reasoning of the majority. Its opinion is in conflict with our previous holding in *Bagley v. Commissioner*, 8 T.C. 130 (1947), as to what constitutes a deduction for estate planning under section 212(2). Indeed, the majority overrules that decision. *Bagley* was not appealed by the Commissioner, nor has it previously been criticized nor limited in its application, although it has been relied upon for a long period of time. In *Schultz v. Commissioner*, 50 T.C. 688, 700 (1968), we stated the following:

The record herein furnishes no basis for an allocation. Such being the case, we cannot determine to what extent the services included estate planning of the type which might give rise to a deductible expense under section 212. *Nancy Reynolds Bagley*, 8 T.C. 130 (1947). * * *

The present case, involving a trust tainted with the pejorative connotations of an ESP trust which was expressly designed to shift income, is an exceedingly poor vehicle for reconsidering the parameters of section 212(2). The vast majority of estate planning expenses are legitimate in all respects. I would not characterize the expenses which we allowed in *Bagley* as "investment advice" as does the majority, but would, instead,

describe them as estate planning expenses. The expenses incurred by the Lumans were for advice in the establishment and operations of an inter vivos trust, the income from which is deemed retained by them for life. Under the rationale of *Bagley*, the $20,000 fee paid by the Lumans is deductible.

Let us suppose, for example, that an elderly couple owns a large ranch with a large herd of cattle. They want their children to inherit the ranch and, in the meantime, want the ranch to be managed carefully. They consult their attorney, who is a member of a prominent, "silk stocking" law firm, who prepares an inter vivos trust to own the ranch in which the couple retains the income of the trust for life. They approve the trust agreement and appoint the trust department of a large bank as trustee because it has a very competent farm and ranch management department. Under the rationale of the majority in the instant case, the fee which the couple pays to their attorney is not deductible. But doesn't this fee represent services rendered for the management, conservation, or maintenance of property held for the production of income? I think that it does and that such a fee should be deductible. I view the payment in my example, in *Bagley*, and in the instant case as coming within the plain language of section 212(2).

The majority attempts to bolster its holding by relying upon *Epp v. Commissioner*, 78 T.C. 801 (1982). I likewise think *Epp* is a poor vehicle for overruling *Bagley*. I viewed *Epp* when it was filed as merely a case where the taxpayer failed to prove that the property she conveyed to the trust was income-producing property. In the instant case, the majority makes a point of the fact that the residence on the ranch was not income-producing property. The residence on an active, income-producing ranch has been held by us to be a part of the business premises of a ranch, and it follows, therefore, that it is an integral part of the income-producing asset, the ranch. *McDowell v. Commissioner*, T.C. Memo. 1974–72.

Lastly, the suggestion of the majority as to an allocation of such fees is unworkable. If I were an attorney preparing an estate plan, I could not conceive of a way to allocate my fee among the various results of my work in order for some of the fee to be deductible. Any allocation would be nothing more than a fiction.

I conclude, therefore, that the Court should have continued to apply the correct interpretation of section 212(2) as it did in *Bagley*.