DEWITT TALMADGE FERRELL, JR. and FRANKIE S. FERRELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ferrell v. Commissioner
Docket No. 19535-85.
United States Tax Court
T.C. Memo 1987-102; 1987 Tax Ct. Memo LEXIS 98; 53 T.C.M. (CCH) 209; T.C.M. (RIA) 87102; February 23, 1987. Dewitt T. Ferrell, Jr. and Frankie S. Ferrell, pro se. Cynthia M. Odle-Schlechty, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
§ 6653(a)(1) [1]
§ 6653(a)(2)
1981
$11,005.75
$550.29
*
1982
12,113.68
605.68 ** After concessions, the issues remaining for our decision are: (1) whether petitioners' business activity constituted an "activity not engaged in for profit" within the meaning of section 183; (2) if petitioners' business activity was engaged in for profit, whether they have substantiated business losses in excess *101 of the amounts determined by respondent; (3) whether petitioners are entitled to an investment tax credit in 1981 for an automobile used in their asserted business activity; (4) whether petitioners are entitled to a charitable contribution deduction in 1982 in excess of $2,026.25; and (5) whether petitioners are liable for additions to tax under sections 6653(a)(1) and (2) for 1981 and 1982. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. When they filed their petition herein, petitioners Dewitt Talmadge Ferrell, Jr. (hereinafter "petitioner") and Frankie S. Ferrell (hereinafter "Frankie"), husband and wife, were residents of Athens, Tennessee. They filed joint Federal income tax returns for 1981 and 1982 on which they reported salary income of $83,714.69 and $96,109.20, respectively, and business losses of $21,181.05 and $28,349.47, respectively. The salary income was entirely from petitioner's employment as a full-time commercial pilot for United Airlines. Frankie was a housewife during 1981 and 1982. Petitioner's home terminal was Cleveland, Ohio, *102 from late 1979 until after the years at issue. His family lived during the years at issue in a home that he owned near Athens, Tennessee, and petitioner returned there whenever he was off duty. His job forced him to live in Cleveland, away from his family, for the five to six-day periods he was on duty, but allowed him to return the nearly 600 miles between Cleveland and Athens to visit his family during the intervening two to five-day periods he was off duty. He shared an apartment in Cleveland when he was on duty. Petitioners' claimed business losses derived entirely from an entity they established and operated known as Ferrell Enterprises. Petitioners aggregated their receipts and expenses from activities that they conducted in their spare time on the Schedule C forms for Ferrell Enterprises. The expenses petitioners deducted on the Schedule C forms are as follows: Deductions
1981
1982
Advertising
$ 800.00
$ 88.20
Bank service charges
18.00
69.00
Car & truck expenses
8,214.00
3,550.00
Depreciation
4,162.75
8,588.09
Freight
4.48
Insurance
265.00
265.00
Office supplies & postage
65.00
31.60
Airline travel
246.75
Utilities & telephone
783.00
716.90
Taxes
562.72
Expenses
4,050.00
3,600.00
Photo finishing
432.85
444.18
Cost of production
2,422.50
Packaging
36.40
Duplication
3.99
Equipment
12.89
Amway products
21.48
Truck rental
36.86
Contributions
11,375.50
Total claimed
$21,575.95
[2] $29,052.47
*103 The deductions include, inter alia, the expenses (other than original cost) for a new Cadillac and its insurance, [3] mileage and airfare between petitioner's post in Cleveland and his family's home in Athens, $25 per day of meal expenses for days petitioner spent at his home in Athens, depreciation on a portion of petitioners' residence in Athens, and ten percent of the residence's utility and telephone expenses. Ferrell Enterprises' receipts came from four distinct activities. The first activity was petitioners' sales of Amway products. Petitioners sold Amway products until February of 1981. The second activity was petitioners' sales of sundials. Petitioner designed a sundial while he was on a pilot's strike in 1977 or 1978. He had a sundial made from the design and placed it in the garden of his family's home in Athens. After he stopped selling Amway products petitioner decided to have more *104 of the sundials produced and to try to sell them. He advertised the sundials in a magazine offering to sell them by mail, and placed a few of the sundials on consignment in nurseries. Petitioner sold only two sundials in 1981, and one in 1982. The third activity involved the sale of a poster of Cleveland. Although petitioner is not a professional photographer, he took a photograph of the Cleveland skyline at sunrise and, in equal partnership with another pilot, had it made into a poster. The partnership paid $4,059.80 for 5,558 rolled copies of the poster in December 1981. Petitioner and a third party attempted to sell the posters. They wrote to a number of retailers offering to sell the posters for $1.50 each for quantities of six or more, and suggesting a retail price of $3 to $3.50 per poster. They also advertised the posters for sale at $5 each in TV Guide magazine in May 1982 and placed them for sale in a gift shop for six to eight months. The posters sold slowly. Petitioner gave up trying to sell them and donated them to Goodwill Industries in November 1982. He valued the posters at between $4.95 and $5 each and claimed a total charitable contribution in 1982 of $11,375.50 *105 for his donation of the posters to Goodwill. Goodwill handed the posters out on street corners rather than attempting to sell them. Petitioners also reported on the 1982 Schedule C for Ferrell Enterprises the income they received and the expenses they incurred in renting out a condominium apartment they had purchased in Cleveland. In both years at issue, the receipts reported for Ferrell Enterprises were only a fraction of its deductions. The total gross receipts reported on the 1981 Schedule C for Ferrell Enterprises, all of which was derived from sales of sundials, Amway products, and posters, was $394.90. The Schedule C reported total deductions of $21,575.95, and a net loss of $21,181.05. The total gross receipts reported on the 1982 Schedule C for Ferrell Enterprises was $703, which included receipts from the sales of posters, sundials, and rent from petitioners' condominium apartment in Cleveland. The Schedule C reported total deductions of $29,052.47, and a net loss of $28,349.47. Petitioners maintained no reliable records of the receipts and expenses of Ferrell Enterprises. They kept no contemporaneous records of the number of business miles they claim they drove, *106 kept no receipts for the travel expenses they reported they incurred, and kept no receipts for the utility and telephone expenses they allocated to Ferrell Enterprises. Petitioner purchased and read an income tax guide before completing the joint Federal income tax returns for the years at issue. Respondent disallowed petitioners' deduction of the Schedule C losses reported for 1981 and 1982 for Ferrell Enterprises on the grounds that petitioners had not established that Ferrell Enterprises was engaged in for profit. [4] Respondent also disallowed the investment tax credit petitioners claimed in 1981 for the Cadillac they claim to have used in Ferrell Enterprises. Respondent determined in the alternative that if petitioners' activity was engaged in for profit, they have substantiated business losses of only $3,075.23 and $4,285.85 for 1981 and 1982, respectively. Respondent finally determined that petitioners were liable for additions to tax under sections 6653(a)(1) and (2) for both taxable years. [5]
*107 OPINION Schedule C Losses
Respondent's primary contention with respect to petitioners' Schedule C losses is that they were incurred in an activity not engaged in for profit within the meaning of section 183. Petitioners contend that Ferrell Enterprises was engaged in for profit and that section 183 therefore does not apply. At the outset, we must consider which of the parties bears the burden of proof on this issue. Petitioners assert they are entitled to the benefit of a presumption that Ferrell Enterprises was engaged in for profit in the years at issue because it allegedly reported a profit for 1984 and 1985. Section 183(d) provides that if gross income exceeds deductions attributable to an activity for two (now three) or more of the taxable years in the five consecutive years ending with the taxable year at issue, there is a presumption that the activity was engaged in for profit. Section 183(e) allows taxpayers to elect to have the determination of whether the presumption applies be made at the close of the fourth taxable year following the taxable year in which the taxpayer *108 first engaged in the activity. Section 183(e)(3) requires the election under section 183(e) to be made at such time as the Secretary prescribes. Section 12.9(c)(2), Temp. Income Tax Regs., 39 Fed. Reg. 9947 (March 15, 1974), requires the election to be made no later than sixty days after the taxpayer receives written notice proposing to disallow deductions attributable to an activity not engaged in for profit under section 183. Petitioners have not established that they are entitled to the benefit of a presumption that Ferrell Enterprises was engaged in for profit during 1981 and 1982. There is no evidence in the record that Ferrell Enterprises ever reported a profit before those years so as to be entitled to a presumption under section 183(d) that it was engaged in for profit. There is similarly no evidence in the record that petitioners timely elected to have the determination of whether Ferrell Enterprises is entitled to the presumption that it was engaged in for profit made under section 183(e)'s special rule. We according hold that petitioners *109 must bear the burden of proving that respondent erred in determining that Ferrell Enterprises was not engaged in for profit during 1981 and 1982. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). Having determined that petitioners bear the burden of proof, we must next determine whether they have met their burden of proving that section 183 does not apply to the losses from Ferrell Enterprises. Section 183(a) provides that if a taxpayer's activity constitutes an activity "not engaged in for profit," expenses arising out of the activity are allowed as deductions only as provided in section 183(b). An "activity not engaged in for profit" is defined in section 183(c) as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." If the activity is not engaged in for profit, section 183(b) divides the expenses into two groups. Section 183(b)(1) allows the first group of expenses -- those the Code allows to be deducted regardless of whether they are incurred with *110 a profit motive -- to be deducted in full. Section 183(b)(2) then allows the deduction of the balance of the expenses only to the extent that the gross income derived from the activity equals or exceeds the deductions allowed under section 183(b)(1). For section 183(b)(2) not to apply to limit the deduction of expenses attributed to Ferrell Enterprises, petitioners must prove that they engaged in Ferrell Enterprises with an actual and honest profit objective. Dreicer v. Commissioner,78 T.C. 642, 644 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). The courts have used words such as "basic," "dominant," "primary," "predominant," and "substantial" to describe the requisite profit objective. Lemmen v. Commissioner,77 T.C. 1326, 1340 (1981). While a reasonable expectation of profit is unnecessary, petitioners' profit objective must be bona fide. Bessenyey v. Commissioner,45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967), cert. denied 389 U.S. 931 (1967). Whether there is *111 an intention to make a profit is a factual issue to be resolved on the basis of all the surrounding facts and circumstances. Finoli v. Commissioner,86 T.C. 697, 722 (1986). Greater weight is to be given to objective facts than to petitioners' after-the-fact statements of their intent. Thomas v. Commissioner,84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986). Section 1.183-2(b), Income Tax Regs., contains a nonexclusive list of factors to consider in determining whether an activity is engaged in for profit. The factors are as follows: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended in carrying on the activity; (4) the expectation that the assets used in the activity might appreciate in value; (5) the success of the activity and of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of profits, *112 if any, that were earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation. From a close and thorough examination of the entire record, we are satisfied that petitioners have not proven that Ferrell Enterprises was engaged in with an objective for profit. It instead appears that Ferrell Enterprises was conducted primarily, if not exclusively, to allow petitioners to claim tax deductions and credits for personal expenses. A number of the factors that we find significant in our analysis are discussed below. The manner in which petitioners operated Ferrell Enterprises was unbusinesslike and belies their assertion that their intent was to earn a profit. The record indicates that generating revenue, and keeping track of the revenue generated, was of secondary importance to petitioners. Petitioner admitted at trial that he had no sales expertise when he started Ferrell Enterprises, and the record fails to indicate that he made any effort whatsoever to obtain any. Petitioners conducted Ferrell Enterprises only in their spare time, and their utter failure to generate more than minimal sales revenue strongly indicates that they devoted *113 little effort to sales. Petitioners additionally failed to make the effort necessary to maintain reliable financial records for Ferrell Enterprises. They retained few receipts, and no mileage logs, to substantiate the records they did maintain. Petitioner was uncertain at trial, for instance, whether he had in fact sold any sundials in 1982. In contrast, the evidence suggests that petitioners' reason for engaging in Ferrell Enterprises was to allow them to deduct personal living expenses. Petitioners, who had substantial taxable income from sources other than Ferrell Enterprises, burdened it from the outset with large expenses. A number of the expenses, including petitioner's commuting expenses from his duty station to his family's home in Athens and his meal expenses at the family home, appear to be personal living expenses which are, of course, not deductible. Sec. 262. Petitioner's testimony establishes that he purchased and read an income tax guide so as not to overlook potential deductions. Not surprisingly, petitioners' operation of Ferrell Enterprises produced large losses in both of the years at issue. In sum, we hold that petitioners have failed to establish that *114 they engaged in Ferrell Enterprises with an objective for profit so as to be entitled to deduct their Schedule C losses from Ferrell Enterprises, other than the expenses relating to the apartment, which respondent has allowed, and other than the expenses which do not exceed gross receipts from Ferrell Enterprises, under section 183(b)(2). [6]
Investment Tax Credit
Petitioners claimed an investment credit of $807 on their 1981 joint Federal income tax return for the 1981 Cadillac they purchased and assert they used in connection with Ferrell Enterprises. Respondent disallowed the credit. Taxpayers are not entitled to a tax credit for equipment used in activities not engaged in with the objective of making a profit. Finoli v. Commissioner,supra at 744; Pike v. Commissioner,78 T.C. 822, 841-843 (1982), *115 affd. in an unpublished opinion 732 F.2d 164 (9th Cir. 1984). We have already determined that petitioners did not engage in Ferrell Enterprises with the requisite objective for profit and accordingly sustain respondent on this issue. Charitable Deduction
Petitioners donated their unsold posters of Cleveland to Goodwill Industries in November of 1982. They valued them at between $4.95 and $5 apiece and claimed a charitable deduction on the 1982 Schedule C for Ferrell Enterprises of $11,375.50. Respondent denied petitioners' deduction when he determined that petitioners were not entitled to deduct the Schedule C loss of Ferrell Enterprises. Respondent now concedes that petitioners are entitled to a charitable deduction of $2,026.25 for their donation of 2,774 posters. Respondent based his calculation of petitioners' allowable deduction on the cost of the posters. [7] Petitioners assert that they are entitled to a charitable deduction of $5 for each poster. We must therefore determine the proper charitable deduction allowable for the posters. *116 Petitioners are entitled to claim as a charitable contribution the fair market value of the posters. Sec. 1.170A-1(e)(1), Income Tax Regs. Fair market value is a question of fact to be determined by an examination of the entire record. Skripak v. Commissioner,84 T.C. 285, 320 (1985). Petitioners have the burden of proving that they are entitled to a larger charitable contribution deduction than respondent allowed in his notice of deficiency. Welch v. Helvering,supra at 115; Rule 142(a). Petitioners received the posters in December of 1981 and attempted to sell them wholesale to dealers and retail to customers. They attempted to sell them wholesale in quantities of six or more for $1.50 each, and they attempted to sell them retail for $5 each. Their efforts were so unsuccessful that they gave up attempting to sell the posters and donated them to Goodwill in the fall of 1982. Goodwill elected to hand the posters out free on street corners instead of attempting to sell them at a reduced price. Petitioners argue that *117 the fact that they were allegedly able to sell a handful of the posters for $5 each establishes that they have a fair market value of $5. We disagree. The fair market value of the posters must be measured in terms of the cash price realizable for them. Willow Terrace Levelopment Co. v. Commissioner,345 F.2d 933, 936 (5th Cir. 1965), affg. 40 T.C. 689 (1963), cert. denied 382 U.S. 938 (1965); Strasser v. Commissioner,T.C. Memo. 1986-579; Serdar v. Commissioner,T.C. Memo. 1986-504. The fact that petitioners failed in their efforts to sell the posters for as little as $1.50 each demonstrates that the cash price realizable for the posters was less than $1.50. The fact that Goodwill subsequently elected to give the posters away free rather than attempt to resell them at a price lower than $1.50 suggests that little or no cash was realizable for the posters. In these circumstances, we hold that it has not been established that the fair market value of the posters exceeded the approximately 73 cents per poster *118 amount conceded by respondent. Section 6653(a) Additions
Respondent determined that petitioners are liable for the additions to tax imposed by sections 6653(a)(1) and 6653(a)(2). Petitioners assert they are not liable for those additions. Section 6653(a)(1) imposes an addition to tax if any part of an underpayment is due to negligence or intentional disregard of rules and regulations. Petitioners bear the burden of proving that the additions to tax determined by respondent do not apply. Barton v. Commissioner,424 F.2d 1295, 1296 (7th Cir. 1970), affg. per curiam T.C. Memo. 1969-46, cert. denied 400 U.S. 949 (1970); Luman v. Commissioner,79 T.C. 846, 860-861 (1982). Negligence under section 6653(a)(1) is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). Over the two years at issue petitioners claimed total Schedule C deductions of over $50,000, and a tax credit of over $800, with *119 respect to an activity that had gross sales of less than $1,100. Many of the expenses claimed were apparently personal. The variety and nature of the deductions claimed indicates that petitioners were well acquainted with the tax laws. The fact that petitioner purchased and read an income tax guide also suggests that he was aware of the income tax laws. Petitioners additionally maintained inadequate financial records for Ferrell Enterprises and failed to maintain receipts or mileage logs to support most of the deductions they claimed. Although taxpayers are not subject to the addition to tax for negligence where they simply make honest mistakes of law on complex matters, or take erroneous deductions that they believe in good faith to be entitled, they are required to take reasonable steps to determine the law and to comply with it. Adams v. Commissioner,T.C. Memo. 1982-223, affd. without published opinion 732 F.2d 159 (7th Cir. 1984); Smith v. Commissioner,T.C. Memo. 1982-140, affd. without published opinion 698 F.2d 1215 (5th Cir. 1983). *120 Considering all of the evidence before us, we hold that petitioners have failed to prove that respondent erroneously determined that they are subject to the additions to tax under section 6653(a)(1) for 1981 and 1982. We further conclude that respondent properly determined the items that petitioners negligently reported for purposes of the section 6653(a)(2) additions. We therefore sustain respondent's determination that petitioners are liable for additions to tax pursuant to section 6653(a)(2) for 1981 and 1982, to the extent of the underpayments resulting from the claimed disallowed Schedule C deductions and investment credit. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
*. 50 percent of the interest due on an underpayment of $10,899.75. ** 50 percent of the interest due on an underpayment of $12,113.68. ↩
2. The deductions claimed in 1982 total $29,291.19. The difference between that amount and the $29,052.47 total claimed by petitioners appears to be due to an error in their addition. ↩
3. Petitioners purchased a new 1981 Cadillac Sedan Deville in April of 1981 for $13,451.↩
4. Respondent determined that $2,020.04 of the disallowed 1982 Schedule C loss represented an allowable rental loss from petitioners' Cleveland condominium apartment and reduced their 1982 income accordingly. This involved the allowance by respondent of the claimed expenses for depreciation and realty tax with respect to the apartment ($3,210.14 and $562.72, respectively). ↩
5. Respondent determined that petitioners were negligent in reporting: (1) Schedule C losses of $21,181.05 and $28,349.47 from Ferrell Enterprises in 1981 and 1982, respectively; (2) income and loss from their rental of their condominium apartment on Schedule C for 1982; and (3) entitlement to investment tax credit in 1981.↩
6. As we sustain respondent's determination that petitioners did not engage in Ferrell Enterprises for profit, we need not address respondent's alternative determination that petitioners inadequately substantiated their Schedule C expenses.↩
7. Respondent determined that petitioners paid $2,029.90 for 2,779 posters. Respondent calculated that petitioners donated 2,774 posters to Goodwill Industries and are entitled to deduct $2,026.25, which represents the pro rata cost of the donated posters.↩