DANIEL K. MORROW AND VICTORIA V. MORROW, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Morrow v. Commissioner
Docket No. 28686-89
United States Tax Court
T.C. Memo 1991-101; 1991 Tax Ct. Memo LEXIS 120; 61 T.C.M. (CCH) 2090; T.C.M. (RIA) 91101; March 6, 1991, Filed *120 Decision will be entered for the respondent. Robert J. Murray, for the petitioners. J. Anthony Hoefer, for the respondent. PETERSON, Chief Special Trial Judge. PETERSON
MEMORANDUM FINDINGS OF FACT AND OPINION This case was heard pursuant to the provisions of section 7443A(b) of the Internal Revenue Code, and Rules 180, 181, and 182. All section references are to the Internal Revenue Code, as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined additions to tax for the taxable years 1982, 1985, and 1986 as follows: Additions to Tax Under Section Year
6653(a)(1)
6653(a)(2)
6653(a)(1)(A)
6653(a)(1)(B)
6661
1982
$ 427.47
* $ 2,137.25
1985
$ 126.55
**
1986
$ 547.46
***
$ 2,737.00
After concessions by petitioners the remaining issue is whether *121 petitioners are liable for the additions to tax for negligence and substantial understatements. FINDINGS OF FACT Some of the facts have been stipulated and they are incorporated herein by this reference. At the time Daniel and Victoria Morrow (petitioners) filed their petition, they resided in Ashton, Nebraska. They conducted a grain farming operation outside of Ashton during the years in question. Pursuant to section 77 farmers may elect to report as income loans received on crops from the Commodity Credit Corporation (CCC). Generally, under this procedure farmers obtain a loan on grain harvested in the fall from the CCC and pay back the loan when the grain is sold. Petitioners elected to follow this procedure. Petitioners' usual practice was to deposit loan proceeds from the CCC in their farm operating bank account and to repay the loan from this account. The loan proceeds received in the fall were reported as income that year. When petitioners sold their grain the following spring, the sale proceeds were deposited in petitioners' farm bank account and also reported as income. To offset this amount, the repayment of the CCC loan was deducted as an item of expense entitled *122 "corn repurch." In 1985 petitioners did not follow this practice. Although petitioners obtained a loan from the CCC in the fall of 1984, the company that bought the sealed grain from the CCC the following spring, Peavey Grain Corporation (Peavey), did not pay petitioners for the grain. Instead, Peavey sent payment for the grain directly to the CCC and sent petitioners a check for the amount of the purchase price that was in excess of the CCC loan repayment. Thus, petitioners' farm operating bank account did not reflect Peavey's repayment of the loan as either income received or as a repurchased grain expense. In 1986, when petitioners' 1985 tax return was being prepared by their CPA from the farm operating records, the CPA did not include Peavey's repayment of the loan as income or as an expense. The effect of the CPA's omission caused petitioners' income to be overstated. Petitioners noticed this when their CPA provided them with a preliminary estimate of their tax liability that seemed higher than usual. Petitioners asked their CPA if he had taken a deduction for the repurchased grain expense. After the CPA said that he had not, petitioners sent him information on the amount *123 of the CCC loan. The CPA deducted the repayment of the CCC loan as a repurchased grain expense. Petitioners did not inquire as to whether the loan repayment by Peavey had also been included as income. It was not included and, as a result, petitioners reported an operating loss from their farming operations that was much larger than in previous years. Petitioners did not question this result. Petitioners took advantage of the operating loss. They filed an amended return for 1982 and carried the loss back to that year, which resulted in a refund for 1982. In 1986 petitioners' return again failed to accurately state their tax liability, although for a different reason than in the previous year. Petitioners' CPA failed to include several items of income on their 1986 tax return. The loan proceeds received from the CCC were not included because the CPA misidentified receipt of the loan as an expense rather than income. The CPA also did not include approximately $ 9,000 of payment-in-kind (PIK) certificates that petitioners had received. The result of these omissions was that petitioners' farm operations reported an even larger loss in 1986 than in 1985. Respondent sent petitioners *124 a notice of deficiency with proposed adjustments and additions to tax for the 1982, 1985, and 1986 taxable years. Petitioners have agreed to all of the adjustments, but dispute the additions to tax determined by respondent. OPINION For the years in issue, sections 6653(a)(1) and 6653(a)(1)(A) impose an addition to tax equal to 5 percent of the underpayment if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Sections 6653(a)(2) and 6653(a)(1)(B) impose a further addition to tax in an amount equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations. Under section 6653(a), "Negligence is lack of due care or failure to do what a reasonable or ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985), quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967). Respondent's determination of negligence is presumed to be correct and the taxpayer has the burden of proving the determination is erroneous. Luman v. Commissioner, 79 T.C. 846, 860-861 (1982); *125 Rule 142(a). Petitioners contend that the additions to tax for negligence are not appropriate because their reliance on their CPA was reasonable. To support this contention, petitioners point out that they are not sophisticated business people. They kept records in a manner similar to other farmers and provided these records to their CPA, who was a competent return preparer. Respondent contends that petitioners failed to adequately review their tax returns, thus making their reliance on the CPA unreasonable. Petitioners bear the ultimate responsibility for the correctness of their returns. That they supplied their records to a CPA to prepare their returns and relied on him is not sufficient to relieve them of that responsibility. See Pritchett v. Commissioner, 63 T.C. 149, 174 (1974). Although petitioners questioned the preliminary figures provided by their CPA, they did not follow through and carefully examine the returns they ultimately signed. In 1986, when petitioners' CPA originally presented them with a preliminary figure for their 1985 tax liability, petitioners questioned it as being too high. Petitioners recognized that the records of their farm *126 operating bank account did not include the loan repayment by Peavey and inquired whether the CPA had taken a deduction for repurchased grain. When the CPA stated that he had not, petitioners provided him with documentation of the amount of the loan repayment. However, petitioners failed to inform the CPA that the amount of the repayment should also be included as income for 1985. This resulted in petitioners having an operating loss much larger than in previous years. When petitioners became aware that their CPA was not fully informed of the transaction, they should have made certain that the CPA had the details concerning the complete transaction. Had petitioners properly reviewed their 1985 return, they would have noticed that the sale proceeds from Peavey had not been included, as on previous years' returns. They should have noticed that their income for 1985 was understated by over $ 42,000. This failure to properly review their 1985 return is also the cause of petitioners' underpayment for the 1982 taxable year. Had petitioners properly reviewed the return, they would have recognized that the size of their loss for 1985 did not provide a basis for filing an amended 1982 *127 return. Although petitioners testified that they thought they had questioned their CPA about the large operating loss he calculated for the 1986 return, they failed to follow through before signing their tax return. Petitioners simply accepted the CPA's statement that the return was correct. Petitioners had been farming 31 years and surely had some idea of what the results of their farming activity were. Petitioners could not have adequately reviewed their return if they failed to notice that their income was understated by approximately $ 96,000. On this record we find that petitioners have failed to show that they were not negligent. Petitioners did not adequately review the returns they signed and, as a consequence, they underpaid their income taxes in 1982, 1985, and 1986. Section 6661 Additions to Tax
Section 6661 imposes an addition to tax for a substantial understatement of income tax. As applicable herein, section 6661(b)(1)(A) defines a substantial understatement as an understatement which exceeds $ 5,000 or 10 percent of the tax due. Petitioners concede that the amounts owed for 1982 and 1986 are greater than 10 percent of the tax due. However, they contend *128 that the additions to tax for those years should be waived pursuant to section 6661(c). Section 6661(c) provides that respondent may waive all or any part of the addition to tax if the taxpayer can show that there was reasonable cause for the understatement and that the taxpayer acted in good faith. Petitioners claim that they made a good faith effort to comply with tax laws and were not attempting to indulge in the "audit lottery game." They further claim that respondent did not adhere to the regulatory guidelines for granting such waivers. The standard of review for refusal to grant a waiver of the section 6661 addition to tax is whether respondent has abused his discretion. Mailman v. Commissioner, 91 T.C. 1079 (1988). On this record we hold that respondent's refusal to grant a waiver was not an abuse of discretion. In this regard the most important factor in determining reasonable cause and good faith is "the extent of the taxpayer's effort to assess the taxpayer's proper tax liability under the law." Section 1.6661-6(b), Income Tax Regs. On this record, petitioners have failed to show that respondent abused his discretion. Therefore, they are liable *129 for the addition to tax pursuant to section 6661 as determined by respondent. Decision will be entered for the respondent. Footnotes
*. 50% of the interest due on $ 8,549.00↩
**. 50% of the interest due on $ 2,531.00↩
***. 50% of the interest due on $ 10,950.00↩