CLARK R. HECKER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hecker v. Commissioner
Docket No. 39960-85.
United States Tax Court
T.C. Memo 1987-297; 1987 Tax Ct. Memo LEXIS 297; 53 T.C.M. (CCH) 1128; T.C.M. (RIA) 87297; June 16, 1987. Paul P. Weil and Juan D. Keller, for the petitioner. Douglas W. Hinds, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions to tax as follows: Addition to Tax
Year
Deficiency
Sec. 6653(a) [1]
Sec. 6659
1980
$7,790.42
$389.52
1981
5,501.00
1,650.30
Respondent determined that the underpayments of taxes for both years are subject to interest at a rate determined under section 6621(d). [2]
After concessions, the issues *299 that we must decide are: 1. Whether petitioner is entitled to charitable contribution deductions for 1980 and 1981 in excess of $4,337.69 and $5,540, respectively. 2. Whether petitioner is liable for the addition to tax under section 6653(a) for 1980. 3. Whether petitioner is liable for the addition to tax under section 6659 for 1981. 4. Whether petitioner is subject to interest at a rate determined under section 6621(c) attributable to his underpayments for 1980 and 1981. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner was a resident of St. Louis, Missouri, when he filed his petition herein. He timely filed individual Federal income tax returns for both of the years in issue. The deficiencies determined by respondent are attributable entirely to the charitable contribution deductions petitioner claimed for his donations of eight tourmalines to the Peabody Museum of Harvard College ("Harvard") in 1980, and nine mineral specimens to Vassar College ("Vassar") in 1981. Petitioner purchased the eight tourmalines from Hansen Minerals *300 on September 28, 1979 for a total of $5,100. The tourmalines ranged in size from about 15 carats to about 90 carats. He purchased the nine mineral specimens from Hansen Minerals on October 27, 1980 for a total of $5,100. He donated the eight tourmalines to Harvard on December 9, 1980. He claimed a $24,164.25 charitable contribution on his 1980 return for the donation. [3] He deducted $17,703.06 of the contribution from his 1980 income, and carried forward $6,461.19 to 1981. He donated the nine mineral specimens to Vassar on December 18, 1981.[4] He claimed a $19,500 charitable contribution on his 1981 return for the donation. [5]
*301 Respondent audited petitioner's returns and determined that the fair market value of the tourmalines contributed in 1980 was $3,400 rather than the $24,164.25 shown on the 1980 return, and that the fair market value of the mineral specimens contributed in 1981 was $3,400 rather than the $19,500 shown on the 1981 return. Respondent determined that the underpayment for 1980 was subject to the addition to tax provided by section 6653(a), and that the underpayment for 1981 was subject to the addition to tax provided by section 6659. Respondent determined that all of petitioner's underpayments for both years at issue were subject to interest at the rate provided by section 6621(c). We find that the underpayment resulting from petitioner's overstatement of the value of his charitable contributions was greater than $1,000 in each of the years at issue. OPINION Charitable Deductions
The first issues for our decision are the proper charitable deductions allowable for the tourmalines and the mineral specimens. Petitioner is entitled to claim as charitable contributions the fair market values of the tourmalines and the mineral specimens, as of the dates he contributed them to *302 Harvard and Vassar, respectively, in accordance with section 170. Sec. 1.170A-1(e)(1), Income Tax Regs. The fair market values are the prices at which they would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts. Sec. 1.170A-1(c)(2), Income Tax Regs. Fair market value may be determined based upon the prices at which the tourmalines and mineral specimens would change hands in the markets in which they are most commonly sold to the persons who ultimately use them. Anselmo v. Commissioner,80 T.C. 872, 881-882 (1983), affd. 757 F.2d 1208 (11th Cir. 1985). Fair market value is a question of fact to be determined by an examination of the entire record. Skripak v. Commissioner,84 T.C. 285, 320 (1985). Petitioner has the burden of proving that he is entitled to a larger charitable contribution than respondent allowed in his notice of deficiency. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). Both parties have now conceded that their original valuations were too extreme. Petitioner now contends *303 that the proper fair market values are those given by his expert: $19,430 for the tourmalines and $15,640 for the mineral specimens. Respondent now contends that the proper fair market values are those given by his experts: $4,337.69 for the tourmalines [6] and $5,540 for the mineral specimens. [7]
In the present case expert witnesses testified on behalf of both petitioner and respondent. The opinions of experts are admissible and relevant to the issue of value, but the opinions must be weighed in light of each expert's qualifications and all other relevant evidence of value. Johnson v. Commissioner,85 T.C. 469, 477 (1985). We may reject expert testimony when in our best judgment it is appropriate to do so. Helvering v. National Grocery Co.,304 U.S. 282, 295 (1938); *304 Chiu v. Commissioner,84 T.C. 722, 734 (1985). Petitioner relies on appraisals performed by David B. Michaels to establish that the fair market values of the tourmalines and mineral specimens exceeded the amounts determined by respondent. [8] Michaels is a professor of Business Management at a community college in Northern Virginia. He devotes 25 to 30 percent of his time to gem appraisal. He has only been involved incidentally in the purchase and sale of gemstones, minerals, and jewelry. He has never been in the business of purchasing and selling gemstones, minerals, or jewelry. He has never worked in either the wholesale or retail side of the jewelry business. He began rendering appraisals in 1982. Michaels' principal expertise is in evaluating *305 the quality of gemstones rather than their dollar value. [9] Due to his lack of personal knowledge of the market prices that prevailed in 1980 and 1981, he was forced to value the tourmalines and mineral specimens based on prices indicated in nationally available pricing guides and price lists, and discussions with gemstone dealers, collectors, and museum curators. Michaels used a consistent formula to value the seven tourmalines that he could examine. [10] He first determined base prices for six different colors of tourmaline. He began by determining a range of 1984 market prices for high quality one carat tourmalines based on pricing guides and price lists that were available nationally, and discussions with gemstone dealers. [11] He then determined an average price for high quality tourmalines of each color by averaging the high and low prices from the range of market prices. He next increased the average prices by 92 percent to reflect his estimate of the per carat premium placed on tourmalines larger than one carat. He then *306 decreased the price by 25 percent to adjust for his determination of the increase in tourmaline prices between 1980 and 1984. The result of these computations was his determination of the per carat price of high quality tourmalines of six different colors. He then applied the six prices to determine the market values of the tourmalines at issue. He began by rating the quality of each tourmaline as a percentage of the quality of a high quality tourmaline. He multiplied the weight of each tourmaline by the per carat 1980 price he had determined for that color stone, and multiplied that product by the percentage of quality rating he had determined for the tourmaline. He finally increased the product of that computation by 10 percent to reflect his estimate of the brokerage commission that a buyer would have to pay. Michaels was unable to examine the rubellite tourmaline. He appraised the rubellite tourmaline at the same value per carat as an appraisal *307 that had been performed previously. [12] Michaels valued the nine mineral specimens donated to Vassar based on talks with collectors and museum curators, and his own experience. Respondent relies on appraisals performed by Elly Rosen and Eric Freedman to support his determination of the fair market values of the tourmaline and mineral specimens. Rosen appraised the eight tourmalines. [13] He is an independent appraiser of gems and has extensive experience evaluating, appraising, buying, and selling tourmalines. [14] During the years at issue, he was actively engaged in purchasing, selling, and appraising tourmalines similar to those in this case. He is familiar with the accepted principles and procedures used by professional appraisers, and has instructed hundreds of students in the principles of jewelry appraisal. *308 In appraising the tourmalines, Rosen did not rely on price lists to determine their market values because, in his experience, price lists do not accurately reflect market value. He instead valued the tourmalines, other than the rubellite, by thoroughly inspecting them and appraising them based on his knowledge of the prices similar stones traded for in the market in which, in his opinion, they were most commonly sold to their ultimate users during 1980 and 1981. [15] Rosen identified that market as gem shows at which the tourmalines and mineral specimens would be sold to reasonably knowledgeable collectors. He stated, however, that it was difficult to choose a primary market for some of the tourmalines. He explained that a large number of tourmalines were also sold to jewelry dealers and that some of the eight tourmalines could be used in jewelry. Rosen declined to value the mineral specimens donated to Vassar because he felt he lacked the experience necessary to appraise them. *309 Freedman appraised the seven tourmalines that were available for him to examine and the nine mineral specimens. [16] He is the president of B. Freedman Jewelers, Inc. of Huntington Village, New York, is an instructor of Appraisal Studies at C.W. Post College, and is the director of one of the only two accredited gem testing laboratories in the New York City metropolitan area. He has been in the gem business his entire business life and he has personally bought and sold gemstones for 17 years. He has had a personal interest in minerals since he was a child, has a personal mineral collection, and monitors the market for mineral specimens closely by attending shows of mineral specimens. During 1980 and 1981 he bought and sold gemstones and mineral specimens. His long-term exposure to the markets for tourmalines and mineral specimens has allowed him to develop a good awareness of market values. He is aware that price lists exist for tourmalines and mineral specimens. He chose not to rely on them in performing his appraisals, however, *310 because in his experience they do not reflect market value accurately. He valued the tourmalines and mineral specimens based on his knowledge of the markets in which, in his opinion, they were most commonly sold to their ultimate users during 1980 and 1981. He identified those markets as the market in which the tourmalines would be sold to jewelry dealers for use in jewelry and the market in which the mineral specimens would be sold to collectors. He agreed with Rosen, however, that it was difficult to select a primary market for the tourmalines from between the market in which they would be sold to jewelry dealers and the market in which they would be sold to collectors. [17]
Freedman testified that the tourmalines at issue in this case were low grade. He testified that the value of low grade tourmalines remained flat between 1979 and December 1980 even though better grade tourmalines appreciated slightly. He testified that mineral specimens decreased in value between October 1980 and December 1981. We were *311 impressed with the experience and credentials of Rosen and Freedman. They both had extensive experience buying and selling the items they appraised. Both were involved in the gem business full-time during the years at issue. Their appraisals support the values conceded by respondent. We were unimpressed with the experience and credentials of Michaels. The record revealed the shallowness of his knowledge of the gem market -- particularly with regard to appraising the dollar value of gems as opposed to evaluating their quality. Michaels admitted that he had never been in the business of purchasing and selling gemstones, minerals, and jewelry, and has only been involved incidentally in their purchase and sale. We have serious doubts that the methodology he used to appraise the tourmalines yielded values that reflected market prices accurately. [18] The mathematical formula that he used to appraise the values of the tourmalines included a number of variables. We are concerned that his use of inaccurate variables caused his formula to produce inaccurate values. One of the variables was the market prices of tourmalines in 1980. One of our concerns is that Michaels' lack of first *312 hand knowledge of market prices forced him to rely too heavily on catalog prices, which both Freedman and Rosen testified could not be relied upon to reflect market prices accurately. Although Michaels testified that he confirmed the prices he arrived at through his formula by discussing them with dealers and collectors, we are unconvinced that those third parties had the ability to appraise the tourmalines accurately. The record does not indicate that the third parties had the opportunity to examine the tourmalines, and does not reveal the experience and credentials of the third parties. Another of the variables was the grading of the tourmalines. Freedman testified that Michaels purported to apply a system to grade the tourmalines by using colors that do not exist under that system. In sum, we are convinced that Rosen and Freedman had the personal experience and expertise necessary to appraise the values of the tourmalines and mineral specimens accurately. We are not convinced that Michaels had the necessary personal experience and expertise. We hold that petitioner has failed to prove that the fair market values of the tourmalines and mineral specimens exceeded the $4,337.69 *313 and $5,540, respectively, conceded by respondent. [19]
*314 Section 6653(a)
Respondent determined that petitioner is liable for the addition to tax under section 6653(a) for 1980. Petitioner bears the burden of proving that the addition under section 6653(a) determined in respondent's notice of deficiency does not apply. Barton v. Commissioner,424 F.2d 1295, 1296 (7th Cir. 1970), affg. per curiam T.C. Memo. 1969-46, cert. denied 400 U.S. 949 (1970); Luman v. Commissioner,79 T.C. 846, 860-861 (1982). Section 6653(a) imposes an addition to tax if any part of an underpayment is due to negligence or intentional disregard of rules and regulations. Negligence under section 6653(a) is defined as lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). The addition to tax under section 6653(a) may not apply when a taxpayer claims charitable deductions in excess of fair market value in good faith and in reasonable reliance on appraisals performed by qualified experts. See Butler v. Commissioner,T.C. Memo. 1985-613. We nevertheless conclude *315 that the addition to tax under section 6653(a) applies in this case. Petitioner failed to introduce into evidence, or testify as to the contents of, the appraisal reports he claims to have relied on in valuing the tourmalines he donated in 1980. Without evidence concerning the appraisal reports, we are unable to determine whether they support the values petitioner claimed. Even if petitioner had established that the reports support the values he claimed, we would be unable to assess the reasonableness of his reliance on them without evidence of the qualifications of the purported experts who produced them. The amount petitioner claimed as charitable contributions in 1980 appears to be unreasonable considering the amount he paid approximately one year earlier for the tourmalines. All of the expert appraisals presented at trial, even those of petitioner's own expert, confirm that the values he claimed were excessive. In view of the apparent unreasonableness of the values petitioner claimed and his complete failure to introduce any evidence that he reasonably relied on expert appraisals in claiming those values, we hold that petitioner has failed to prove that respondent erroneously *316 determined that he is subject to the addition to tax under section 6653(a) for 1980. Section 6659
Section 6659 provides, as is relevant here, for an addition to tax on underpayments attributable to valuation overstatements. Section 6659(c) defines valuation overstatement to include, inter alia, the claim on a return of a valuation of 150 percent or more of the correct valuation. Respondent determined in his notice of deficiency that the entire underpayment for 1981 was due to a valuation overstatement of the mineral specimens donated to Vassar. Petitioner claimed on his 1981 return a value of $19,500 for the mineral specimens. Petitioner has the burden of proving that he is not liable for the addition to tax under section 6659 as it was determined by respondent in his notice of deficiency, as modified by respondent's concessions herein as to values. Welch v. Helvering,supra; Rule 142(a). We have already held that petitioner has failed to prove that the mineral specimens were worth more than the $5,540 conceded by respondent. As $19,500 is more than 150 percent of $5,540, we hold that petitioner has failed to prove that he is not liable for the addition *317 to tax provided by section 6659. Section 6621(c)
Respondent determined in his notice of deficiency that all of petitioner's underpayments for both years at issue are subject to interest at the rate determined under section 6621(c). Section 6621(c) provides for a rate of interest on substantial underpayments attributable to tax motivated transactions of 120 percent of the underpayment rate established under section 6621. The rate applies to interest accruing after December 31, 1984, even if the tax motivated transaction occurred prior to that date. Solowiejczyk v. Commissioner,85 T.C. 552, 555-556 (1985), affd. without published opinion 795 F.2d 1005 (2d Cir. 1986); sec. 301.6621-2T, Q-10 and A-10, Proced. & Admin. Regs. (Temporary), 49 Fed. Reg. 50393 (Dec. 28, 1984). To be subject to the rate, the aggregate underpayment for a year attributable to all tax motivated transactions must exceed $1,000. Sec. 6621(c)(2). Tax motivated transactions include, inter alia, valuation overstatements within the meaning of section 6659(c). Sec. 6621(c)(3)(A)(i). Petitioner bears the burden of proving that respondent improperly applied the *318 rate of interest determined under section 6621(c). Welch v. Helvering,supra; Rule 142(a). We conclude that petitioner has failed to satisfy his burden of proof. We have already upheld respondent's determination that petitioner's underpayment for 1981 was due entirely to a valuation overstatement. Petitioner's underpayment for 1980 was also due entirely to a valuation overstatement. Petitioner claimed on his 1980 return a value of $24,164.25 for the eight tourmalines donated to Harvard. We have held that he failed to prove that they were worth more than the $4,337.69 conceded by respondent. The $24,164.25 value petitioner claimed is more than 150 percent of the $4,337.69 conceded by respondent. We found as a fact that the underpayments attributable to petitioner's valuation overstatements exceeded $1,000 in both 1980 and 1981. We accordingly uphold respondent's determination that the rate of interest determined under section 6621(c) applies to the underpayments for both 1980 and 1981. To reflect the foregoing, Decision will be entered under Rule 155.
Appendix I Clark R. Hecker
1980 Donations to
Harvard
Value Per
Description of
Purchase
Deduction
Petitioner's
Tourmaline
Price
Claimed
Expert Michaels
Pink Rubellite
$ 2,060
Yellowish-Green to
Green
1,230
Golden-Yellowish
Brown
1,400
Black
2,070
Slightly Greenish-
Yellow
$5,100
$24,164.25
3,240
Pinkish Brown
3,210
Yellowish-Green to
Bluish-Green
2,070
Rubellite
4,150
Total
$5,100
** $24,164.25
$19,430
*319 Clark R. Hecker
1980 Donations to
Harvard
Value Per
Description of
Respondent's Experts
Tourmaline
Freedman
Rosen
Average
Pink Rubellite
$273
$ 181.70
$ 227.35
Yellowish-Green to
Green
450
523.95
486.98
Golden-Yellowish
Brown
494
247.20
370.60
Black
135
179.40
157.20
Slightly Greenish-
Yellow
755
503.40
629.20
Pinkish Brown
1,702
566.80
1,134.40
Yellowish-Green to
Bluish-Green
1,258
301.92
779.96
Rubellite
*   552.00
552.00
Total
$3,056.37
$4,337.69
Appendix II Clark R. Hecker
1981 Donations to
Vassar
Value Per
Value Per
Purchase
Deduction
Petitioner's Expert
Respondent's Expert
Mineral
Price
Claimed
Michaels
Freedman
Kunzite
$8,380
$2,000
Hiddenite (Yellow)
3,800
1,200
Hiddenite (Green)
500
300
Fluorite on Quartz
1,540
300
Green Apophyllite
350
650
Apophyllite with
Stilbite and
Gyrolite
$5,100
$19,500
250
275
Apophyllite with
Stilbite
130
40
Stilbite
250
600
Apophyllite
440
175
Total
$5,100
$19,500
$15,640
$5,540
*320 Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. ↩
2. Sec. 6621(d) was redesignated as sec. 6621(c) by sec. 1511(c)(1)(A)-(C) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2750.↩
3. The total value petitioner claimed for the eight tourmalines is set forth in Appendix I. ↩
4. It is stipulated that Harvard and Vassar are organizations described in secs. 170(c) and 170(b)(1)(A), and that petitioner's contributions to them in 1980 and 1981 are deductible as charitable contributions for Federal income tax purposes. ↩
5. The total value petitioner claimed for the nine mineral specimens is set forth in Appendix II. Petitioner deducted only the $6,461.19 carried over from 1980 on his original 1981 return. He claimed the $19,500 charitable contribution for the nine mineral specimens on an amended 1981 return filed June 14, 1982.↩
6. Respondent's experts Rosen and Freedman both appraised seven of the eight tourmalines. The $4,337.69 value conceded by respondent represents the average of Rosen's and Freedman's valuations of those seven tourmalines, plus Rosen's valuation of the eighth tourmaline. See Appendix I. ↩
7. We treat respondent's present position as a concession, pro tanto, of the values determined in his statutory notice herein.↩
8. Michaels' appraisals of the values of the tourmalines and mineral specimens are set forth respectively in Appendices I and II. The parties stipulated that David P. Wilber valued one of the tourmalines at $4,140.40 on December 5, 1979. Wilber did not testify at trial, however, and we were not presented with evidence that he was qualified to render an expert opinion. We therefore accord his appraisal no weight.↩
9. The record revealed that Michaels had limited knowledge of the gemstone market. For instance, he attended only one gem show in all of 1980 and 1981.↩
10. None of the appraisers were able to examine the rubellite tourmaline because it was missing from Harvard. ↩
11. It is unclear why Michaels began with 1984 prices as he testified that lists existed reflecting 1980 and 1981 prices.↩
12. The original appraisal was $150 per carat. Michaels performed a circular series of calculations based on that original appraisal and arrived at his appraisal of $150 per carat.↩
13. Rosen's appraisals of the values of the tourmalines are set forth in Appendix I.↩
14. See Price v. Commissioner,T.C. Memo. 1985-182↩, for a further description of Rosen's qualifications.
15. As we discussed supra↩ at note 9, none of the appraisers were able to examine the rubellite tourmaline as it was missing from Harvard. Rosen valued it based on its shape, weight, and color, and by assuming that its quality was similar to the quality of the other donated tourmalines.
16. Freedman's appraisals of the fair market values of the tourmalines and mineral specimens are set forth respectively in Appendices I and II.↩
17. Freedman estimated that the seven tourmalines he appraised would sell for about 20 percent more if they could be sold to collectors rather than jewelry dealers.↩
18. The weakness of Michaels' mathematical approach is illustrated by his appraisal of the missing rubellite tourmaline. As we discussed supra,↩ Michaels appraised the tourmaline at a value equal to the value arrived at in an earlier appraisal performed by a third party. He did so by starting with the value per carat arrived at in the earlier appraisal and performing a circular series of offsetting mathematical calculations that invariably returned him to the same value per carat. 19. The $4,337.69 value of the tourmalines conceded by respondent is less than the $5,100 petitioner paid for them. Although this Court has recognized that the actual price paid for an item is evidence of the item's fair market value, it has also recognized that the actual sales price is not always the best evidence of value. See Price v. Commissioner,T.C. Memo. 1985-182. It is not unusual for taxpayers who have little expertise in the market for goods to pay more than fair market value for the goods. See, e.g., White v. Commissioner,T.C. Memo. 1987-251↩. In the circumstances of this case, we consider it to be neither surprising nor unusual that petitioner paid more than fair market value for the tourmalines. We would, in fact, have been surprised if petitioner had obtained the tourmalines or mineral specimens for significantly less than their fair market values. As petitioner's expert testified, the seller of the items was a knowledgeable dealer who would not be expected to give bargains.
**. Petitioner carried forward $6,461.19 of the $24,164.25 deduction to 1981.↩
*. Item was not valued by expert. ↩