RITA STACHURA AND J.M. BYRON WHITNEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stachura v. Commissioner
Docket No. 11951-87
United States Tax Court
T.C. Memo 1990-13; 1990 Tax Ct. Memo LEXIS 13; 58 T.C.M. (CCH) 1149; T.C.M. (RIA) 90013; January 8, 1990
Rita Stachura and J.M. Byron Whitney, pro se. Phillip A. Pillar, for the respondent. PETERSON
MEMORANDUM FINDINGS OF FACT AND OPINION PETERSON, Chief Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1986, and Rules 180, 181, and 182. All section references are to the Internal Revenue Code, as amended and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined a deficiency in petitioners' Federal income tax for the year 1983 in the amount of $ 1,195.04. Respondent also imposed additions to tax under section 6653(a)(1) in the amount of $ 59.75 and section 6653(a)(2) in an amount equal to 50 percent of the interest due on the deficiency. FINDINGS OF FACT The stipulation of facts as to paragraphs 1, 2, 3, 6 and 7 and attached exhibits are incorporated herein by this reference. Petitioners were legal residents of Austin, Texas at the time this petition was filed. Petitioner Stachura is a registered nurse and earned $ 13,081 in wages during 1983 working in her *15 profession. Those wages plus a small amount of interest income are petitioners' sole source of income. Petitioners are members of a small religious community patterned after the Studite Monks. The philosophy of the religious community is as follows: The Studite Monks are concerned with realizing the fruits of contemplative experience through a communal life * * *. The goal of such a community is to bring the person participating to a more refined experience of corporate humanism, an experience made more fully possible by smaller communal size and less financial resource. * * * Without the pressure created by the need of capital, the monks live and respond in charity to the problems of those who come naturally into their lives. The other members of the religious community in 1983 included Bernadette Ruth Gleitz Whitney (Ruth), three minor children, John Christian and Father Dimitri. Petitioner Stachura, Ruth, John Christian and Father Dimitri were also members and held various titles in the American Orthodox Catholic Church (AOCC). Petitioner Whitney and Ruth are the parents of the three minor children. The religious community lived on petitioner Whitney's property *16 which consisted of a main community home plus a small secondary home. A room was set aside in the main community home as a chapel, where petitioner Whitney held daily religious services. John Christian was the patriarch of AOCC and Father Dimitri the chancellor. They came to live with petitioners in 1982 continuing through 1983. Petitioners' home was John Christian's principal place of residence, and petitioners provided more than half his support by providing him with a home, travel expenses, medical expenses, and a recreation retreat. It is unclear from the record how long Father Dimitri stayed in petitioners' home and how much of his support was provided by petitioners. Additionally, during 1983 petitioners took into their religious community Javier Hernandez who professed an interest in working for the good of the community. To that end a $ 1,200 loan was taken out by Mr. Hernandez and petitioner Stachura. This loan was secured by a religious community savings account which earned $ 115 interest in 1983. The bank applied the $ 115 to the debt above. Thereafter, Mr. Hernandez disappeared with the $ 1,200 and petitioners' automobile which was worth $ 1,000. Petitioner *17 Stachura deposited her wages into a religious community checking account which was used by petitioner Stachura and Ruth to pay general household expenses. Petitioners claimed, as a charitable contribution deduction, one-half of their adjusted gross income for alleged contributions to their religious community. Petitioner Whitney's three children and their mother Ruth resided with petitioners 365 days during 1983 and petitioners provided 100% of their support. In the notice of deficiency, respondent disallowed all of petitioners' itemized deductions. Respondent contends petitioners are not entitled to the amount deducted as a charitable contribution because the amounts contributed were not contributed to a qualified charitable organization under section 501(c)(3), and the amounts contributed inured to the benefit of petitioners. Respondent contends petitioners are not entitled to any other itemized deductions because of lack of substantiation. In addition, respondent disallowed four of petitioners' six claimed dependency exemptions because of lack of substantiation. Respondent also contends that petitioners failed to report $ 115 of interest income. Respondent's only concession *18 is that a valid, joint return was timely filed by petitioners. Petitioners contend they are a religious community and that they are therefore exempt from paying Federal income tax. They largely accomplished this alleged exempt status by deducting one-half their income as a charitable contribution to the religious community. Petitioners also contend their itemized deductions are substantiated and properly taken and that they are entitled to at least six dependency exemptions. Additionally, they contend that although their savings account earned $ 115, they did not receive that money since the bank applied it to their outstanding indebtedness, and, therefore, it should not be included as income. OPINION After an examination of the record, we find that respondent was in error in disallowing all of petitioners' itemized deductions. We find that petitioners have substantiated medical and dental expenses in the amount of $ 1,018 ($ 286 in cancelled checks, $ 232 from credit card statements, and $ 500 cash for childbirth expenses); taxes in the amount of $ 1,128 ($ 926 for real estate taxes and $ 202 for sales tax); interest expense in the amount of $ 1,543 ($ 1,543 in cancelled checks); *19 and a theft loss in the amount of $ 2,200. In addition, we find that petitioners have substantiated five dependency exemptions for a total of seven exemptions. Those five exemptions are for petitioner Whitney's three children, Ruth, and John Christian. The primary legal issue for our determination is whether petitioners properly deducted one-half their income as a charitable contribution under section 170. In order for the deduction to be proper, petitioners must show that (1) their contributions were made to a qualifying organization under section 501(c)(3), and (2) the contributions did not inure to the benefit of any individual. Sec. 170(c). Petitioner Stachura turned her entire income over to the community. Payments were made from the community bank account for bank loans, membership in two recreation/retirement retreats for John Christian, medical and dental expenses for community members, groceries, utilities and other household expenses. Petitioners argue that they are a part of AOCC, which they contend is a tax-exempt organization. However, petitioners did not make the alleged charitable contribution to AOCC, but to petitioners' own small religious community. It *20 is this religious community, not AOCC, which must qualify as a charitable organization under section 501(c)(3) in order to satisfy the first part of the above test. We need not rule upon whether petitioners meet the first part of the test since they have failed to meet the second part of the test. Both parts of the test must be met in order to validly claim a charitable contribution under section 170. The second part of the above test has not been met because the alleged charitable contributions inured to the benefit of petitioners and petitioners' dependents. Petitioner Stachura was supporting herself and six others on her income and so necessarily most of her income covered the personal living expenses of the community. Although it was charitable of petitioner Stachura to support her extended family in the religious community, this does not rise to the level of a charitable contribution under section 170. Miedener v. Commissioner, 81 T.C. 272, 281 (1983). Therefore, petitioners are denied the deduction for their alleged charitable contributions. Respondent contends petitioners omitted $ 115 of interest income. The record indicates the interest income was *21 earned by petitioners in 1983. Gross income includes income from interest. Sec. 61(a)(4). Petitioners argue they did not gain control of that money since the bank applied it to their outstanding indebtedness with the bank, and, therefore, they should not be required to include it in income. However, petitioners received an economic benefit because of the application of the interest income to their outstanding indebtedness, and so that amount must be included in their gross income. Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729-30 (1929); Huff v. Commissioner, 80 T.C. 804, 814 (1983). Included in the notice of deficiency is the imposition of a self-employment tax in the amount of $ 57.04. The record shows that there was no self-employment income which might be subject to tax. Therefore, we hold that petitioners' alleged liability for this amount is inappropriate. Respondent determined that petitioners are subject to additions to tax under sections 6653(a)(1) and 6653(a)(2). The additions to tax under section 6653(a) apply if any part of any underpayment of tax is due to negligence or intentional disregard of rules and regulations. *22 Under section 6653(a), "Negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985), quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967). Respondent's determination of negligence is presumed to be correct and the taxpayer has the burden of proving the determination is erroneous. Luman v. Commissioner, 79 T.C. 846, 860-861 (1982); Rule 142(a). Under this record, petitioners were of the belief that the contribution to the religious community qualified as a charitable contribution; however, they failed to take the necessary steps to qualify the organization as a religious entity under the Internal Revenue Code. As such, we find the petitioners' underpayment of tax was due to intentional disregard of rules and regulations. Accordingly, petitioners are liable for the additions to tax under section 6653(a)(1) and (2). Decision will be entered under Rule 155.