OMAR BARRIENTOS AND ISABEL BARRIENTOS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barrientos v. Commissioner
Docket No. 6789-93
United States Tax Court
T.C. Memo 1995-322; 1995 Tax Ct. Memo LEXIS 323; 70 T.C.M. (CCH) 102; July 19, 1995, Filed *323 Decision will be entered under Rule 155. Omar Barrientos, pro se. For respondent: Timothy P. Brynteson. DEAN
DEAN
MEMORANDUM OPINION DEAN, Special Trial Judge: This case was assigned pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined a deficiency of $ 5,639 in petitioners' 1988 Federal income tax, and an addition to tax under section 6653(a)(1) in the amount of $ 281.95. After concessions, [2] the issues for decision are: (1) Whether petitioners may claim a Schedule C bad debt deduction in the amount of $ 9,700; and (2) whether petitioners are liable for the negligence penalty provided under section 6653(a)(1). *324 Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners reside in Rapid City, South Dakota, at the time they filed their petition. References to petitioner are to Omar Barrientos. Background
During the taxable year 1988, petitioner was the sole shareholder of MexicoU.S.A., Inc., a corporation which operated Don Rafael's, a restaurant located in Rapid City, South Dakota. At all pertinent times, petitioner's wife (petitioner Isabel Barrientos) and children were salaried employees of Don Rafael's. Although petitioner also worked at the restaurant, he was not paid wages. According to the Schedule C, Profit or Loss from Business, attached to petitioners' 1988 Federal income tax return, petitioner was engaged that year in business as a "broker", which was explained at trial to mean he was a "mortgage loan broker". Petitioners listed the name of petitioner's Schedule C business as "OMBAR FIN. SERV." (hereinafter Ombar). On June 10 and June 28, 1988, petitioner caused Ombar to make loans to MexicoU.S.A., Inc., in the amounts of $ 5,900 and $ 2,000, respectively. A note *325 reflecting the promise of MexicoU.S.A., Inc., to repay these amounts with interest on or before September 15, 1988, was executed by petitioner as "president" on June 30, 1988. On September 12, 1988, a voluntary petition for relief under chapter 11 was filed by MexicoU.S.A., Inc., DBA Don Rafael's restaurant, pursuant to 11 U.S.C. section 301 (1988). [3] Notwithstanding this fact, petitioner caused Ombar to make a loan in the amount of $ 1,800 to MexicoU.S.A., Inc., on December 12, 1988. A note reflecting the promise of MexicoU.S.A., Inc., to repay this amount with interest on or before December 31, 1988, was executed by petitioner as "president" on December 12, 1988. [4]
*326 MexicoU.S.A., Inc., DBA as Don Rafael's restaurant acknowledges receipt of the sum of Eighteen Hundred Dollars ($ 1,800.00) from Ombar Financial as a loan. Said loan to be re-paid not later than December 23, 1988. The re-payment shall include a total interest of One Hundred Eighty Dollars ($ 180.00) Signed in Rapid City on this 12th day of Dec., 1988. MEXICOU.S.A., INC. BY: /s/Omar Barrientos [Emphasis added.]
The parties also stipulated the authenticity of an "unsecured note", dated Dec. 12, 1988, which acknowledges the obligation of petitioner, as "president", to pay Ombar Financial Services $ 1,800, plus 10 percent interest, on Dec. 31, 1988. There is no explaination for the differing due dates indicated on the "LOAN RECEIPT" and the "unsecured note". MexicoU.S.A., Inc., failed to pay the amounts due under each of the previously described notes. Petitioners claimed a deduction in the amount of $ 8,800 [5] to reflect the worthlessness of these debts on the Ombar Schedule C for 1988. Respondent disallowed this deduction in the notice of deficiency, determining that it was not allowable under section 166 as a business bad debt. Recharacterizing the *327 loss as a nonbusiness bad debt, however, respondent allowed petitioners a Schedcule D, Captial Gains and Losses, short-term capital loss in the amount of $ 3,000, and a capital loss carryover in the amount of $ 5,500. Petitioners contest respondent's detrmination, arguing that the bad-debt deduction should be allowed in full. [5]
Respondent's determinations in this matter are presumed correct, and petitioners bear the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Discussion *328 Section 166(a) provides that a deduction is to be allowed for any debt which becomes worthless during the taxable year. However, section 166(d)(1)(A) provides that in the case of a taxpayer other than a corporation, section 166(a) shall not apply to any nonbusiness debt. Section 166(d)(2) defines a nonbusiness debt as "a debt other than -- (A) a debt created or acquired * * * in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business." Pursuant to section 166(d)(1)(B), if a nonbusiness debt becomes worthless during the taxable year, the loss resulting therefrom shall be treated as a short-term capital loss. Section 1211(b) restricts the deduction for capital losses of a taxpayer other than a corporation to the extent of capital gains plus (if such losses exceed such gains) the lesser of $ 3,000 or the excess of such losses over such gains. Section 1212(b) permits a taxpayer other than a corporation to carry over any capital loss in excess of this amount to the succeeding taxable year. The question of whether a debt is a business debt or a nonbusiness debt is a question of fact in *329 each particular case. Sec. 1.166-5(b), Income Tax Regs. In this regard, a debt must be proximately related to the taxpayer's conduct of a trade or business in order to constitute a business debt. United States v. Generes, 405 U.S. 93 (1972); sec. 1.166-5(a)(2), Income Tax Regs. Whether a debt bears a proximate relation to a taxpayer's trade or business is determined by the dominant motivation of the taxpayer in incurring the debt. United States v. Generes, supra at 103. A significant motivation is not sufficient. Id.
Petitioners argue that they are entitled to a business bad-debt deduction for amounts lent to Mexico U.S.A., Inc. They have failed to demonstrate, however, a proximate relation between these loans and the trade or business petitioner conducted through Ombar; i.e., mortgage loan brokerage. Based on the record, we find that petitioner's dominant motive for lending funds to MexicoU.S.A., Inc., was to keep Don Rafael's in business. We also find that petitioner had a significant motive in protecting the jobs of his wife and children. [6] Thus, these loans were of a personal nature. Accordingly, the debts *330 owed by MexicoU.S.A., Inc., are nonbusiness debts subject to the limitations of section 166(d)(1)(B). Section *331 6653(a)(1), applicable for 1988, imposes an addition to tax equal to 5 percent of any underpayment of tax required to be shown on a return that is attributable to negligence. The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code. Sec. 6653(a)(3). Furthermore, negligence is defined as a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitoners bear the burden of proving that the underpayment of tax on their return was not the result of negligence. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982). Petitioners did not address the issue of negligence at trial and have failed to meet their burden of proof. Accordingly, respondent's determination is sustained. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The parties agree that: (1) Petitioners' taxable income should be increased by $ 4,808 and not $ 9,433 as determined by respondent in the notice of deficiency, to account for unreported gross receipts; (2) a travel and entertainment deduction claimed in the amount of $ 750 should be disallowed; and (3) an interest expense deduction in the amount of $ 2,554 should be disallowed.↩
3. On Mar. 10, 1989, the ch. 11 bankruptcy case was converted to a ch. 7 case, presumably pursuant to 11 U.S.C. sec. 1112 (1988)↩.
4. As evidence of this loan, the parties stipulated the authenticity of a document entitled "LOAN RECEIPT", the terms of which are as follows:↩
5. Based on the record, we find that respondent has conceded the issue of worthlessness with respect to each of the loans made to MexicoU.S.A., Inc., during 1988. Furthermore, respondent has expressly conceded that petitioners have substantiated that these loans totaled $ 9,700. Thus, if we find for petitioners in this matter, they will be entitled to a business bad-debt deduction in the amount of $ 9,700, rather than the $ 8,800 claimed on Ombar's 1988 Schedule C.↩
6. Although petitioner worked at Don Rafael's during the year at issue, he received no salary for his services, and petitioners have failed to offer any basis for us to find that he was an"employee" during the year at issue. See, e.g., Schmidt v. Commissioner, T.C. Memo. 1993-506. Furthermore, even if we were to assume, arguendo, that petitioner did so qualify, petitioners have not met their burden of proving that the loans were "necessary to keep his job or [were] otherwise proximately related to maintaining his trade or business as an employee." Whipple v. Commissioner, 373 U.S. 193, 204↩ (1963). Petitioners have not argued that the loans to MexicoU.S.A., Inc., could be viewed as having been made by petitioner Isabel Barrientos in an effort to preserve her salaried position at Don Rafael's. Futher, the record does not support such a finding.