T.C. Memo. 1997-57

UNITED STATES TAX COURT

SANTAR S. YEI AND GRACE H. YEI, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22375-93.                    Filed January 30, 1997.

Santar S. and Grace H. Yei, pro sese.

<u>Dale A. Zusi</u> and <u>Andrew P. Crousore</u>, for respondent.

MEMORANDUM OPINION

JACOBS, <u>Judge</u>:  Respondent determined a $22,476 deficiency in
petitioners' 1989 Federal income tax and a $4,495 accuracy-related
penalty under section 6662(a).

Following concessions by respondent, two issues remain for
decision from respondent's notice of deficiency: (1) Whether

petitioners properly claimed a $60,000 capital loss as a result of petitioner Santar Yei's surrender of 60,000 shares of stock in Cirtex, Inc. (Cirtex) to Cirtex, and (2) whether petitioners are liable for the accuracy-related penalty under section 6662.

We must also decide the following matters, which petitioners raised in their petition: (1) Whether petitioners may reclassify as a repayment of loans (and treat as nontaxable) $45,000 of the $84,000 they reported as wage income; (2) whether petitioners are entitled to an $18,241 deduction in 1989 to offset dividend income that they received from Cirtex and reported in 1988; (3) whether petitioners may claim bad debt deductions for: (a) a $9,100 payment they made to Albert Chang on behalf of Cirtex to purchase his stock in Cirtex, (b) a $1,500 loan they made to Cirtex to permit that company to purchase shares of its stock that were owned by Ba Cac Luong, (c) a $4,000 loan they made on Cirtex's behalf to Esstec, and (d) $1,500 reported as income from the sale of an automobile that petitioners claim they never received; (4) whether petitioners are entitled to a $1,600 deduction as an unreimbursed business expense for the purchase of Cirtex stock held by Katherine Cunningham; and (5) whether petitioners may reduce the amount of gain they reported from the sale of Solectron Corporation (Solectron) stock by $19,000, which amount petitioners gave to family members.

All section references are to the Internal Revenue Code for the year under consideration.  All Rule references are to the Tax

Court Rules of Practice and Procedure.

For convenience and clarity, we have combined our findings of fact and opinion with respect to each issue. Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

## General Findings

Petitioners, husband and wife, resided in Milpitas, California, at the time they filed their petition. Petitioners timely filed a joint Federal income tax return for 1989, the year under consideration. They filed an amended return for 1989 on April 15, 1992.

Petitioner wife, Grace Yei, has a bachelor's degree from Taiwan University and a master's degree in business administration from Golden Gate University. She passed the written portion of the C.P.A. examination following completion of her course work at Golden Gate University but did not pursue certification.

Petitioner husband, Santar Yei, completed 4 years of college in Taipei, Taiwan, majoring in mathematics. He obtained a master's degree in computer engineering from San Jose State University.

Mr. Yei worked for Solectron, located in San Jose, California, while obtaining his master's degree. In 1979, he purchased 10,000 shares of Solectron stock from that company for $10,000 with money from his father. In 1989, he tendered 19,998 shares of Solectron stock to Solectron (pursuant to Solectron's offer to purchase) and

received $99,990 therefor.[1]

In 1984, Mr. Yei acquired a controlling interest in Cirtex, a circuit board manufacturer located in Santa Clara, California, and became its president. Mrs. Yei maintained the company's books and records. Cirtex had approximately 80 employees in the mid-1980's, but that number fell to less than 10 by 1989 because of financial difficulties. The company's problems, including environmental contamination at the company's manufacturing plant, brought about several lawsuits. Cirtex was dissolved on May 22, 1992.

We note that for all of the issues, petitioners have the burden of proving error in respondent's determinations. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Moreover, deductions are a matter of legislative grace, and petitioners bear the burden of proving they are entitled to any deductions claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Issue 1. Stock Sale

Pursuant to a written agreement dated December 9, 1989, Mr. Yei surrendered (for cancellation) 60,000 shares of Cirtex stock to Cirtex. He received no money in connection with this transaction. According to the December 9, 1989, agreement, Mr. Yei surrendered

---

[1] Although the record is far from clear with respect to this matter, it appears that from the time Mr. Yei acquired the 10,000 shares of Solectron stock in 1979 to the date he tendered his stock to Solectron, there had been a 3 for 1 stock split or dividend and a subsequent 2 for 3 reverse (downward) stock split. Hence, we believe that in 1989, Mr. Yei owned 19,998 shares of Solectron stock all of which he tendered to the Company at $5 a share (the tender price).

the 60,000 shares so that a like amount could be subsequently sold by the corporation in order "to ease the cash flow problem caused by buying back from old investor Mr. Chang $60,000 worth of common stock."[2]  Petitioners claimed a $60,000 capital loss on Schedule D of their 1989 return as a result of the surrender of the Cirtex stock.  Respondent determined that section 267 precluded the deductibility of the claimed loss.

We agree with respondent's determination that petitioners are not entitled to the claimed loss, but not for the reason stated by respondent.  It is settled law that a dominant (controlling) shareholder who voluntarily surrenders a portion of his stock to the corporation, and continues to retain control, does not sustain an immediate loss deductible for income tax purposes as a result of the surrender of stock.  Rather, the surrendering shareholder must reallocate his basis in the surrendered stock to the stock retained.  Commissioner v. Fink, 483 U.S. 89 (1987).

On the date that Mr. Yei surrendered his Cirtex stock, he and members of his family owned more than 50 percent of the corporation's stock.  There is nothing in the record to indicate

---

[2]    Although the record is not clear with respect to this matter, it appears that in 1988, Cirtex sold 62,500 shares of its stock to a Mr. Albert Chang for $100,000 ($1.60 per share).  The $100,000 received from Mr. Chang was used by the corporation, in part, to redeem its stock from other individuals, and in part, to fund payment of a corporate dividend.  Apparently, Mr. Chang complained that the corporation improperly used his money and in 1989, Cirtex purchased the stock Mr. Chang owned for $110,000, as follows:  $60,000 in cash and a $50,000 interest-bearing corporate note.

that after the surrender of the Cirtex stock, Mr. Yei and members of his family did not retain control of Cirtex. Indeed, Cirtex's corporate income tax returns (Forms 1120) for the corporation's fiscal years ended November 30, 1989 and 1990 reflect that Mr. Yei owned more than 50 percent of Cirtex's stock.

Petitioners claim, in the alternative, that they are entitled to a $60,000 loss deduction under section 165(a), contending that the Cirtex stock became worthless in 1989. Section 165(a) permits the deduction of any loss sustained during the taxable year that is not compensated for by insurance or otherwise. Section 165(g) provides that if a security which is a capital asset becomes worthless during the taxable year, the loss is treated as a loss from the sale or exchange of a capital asset on the last day of the taxable year. Worthlessness of stock is determined both by lack of liquidating value and the absence of any reasonable expectation that the stock will become valuable in the future. Morton v. Commissioner, 38 B.T.A. 1270 (1938), affd. 112 F.2d 320 (7th Cir. 1940). Certain events such as bankruptcy, cessation of business, liquidation of the corporation, or appointment of a receiver may foreclose an expectation of future value. Id.; see also Austin Co. v. Commissioner, 71 T.C. 955 (1979).

In the instant case, no evidence was presented indicating that Cirtex was insolvent in 1989. Nor was any evidence presented as to the occurrence of an identifiable event in 1989 that would foreclose the expectation of future value with respect to the

Cirtex stock. Although Mrs. Yei testified that the company had not been profitable since 1984, her testimony is contradicted by Mr. Yei's statements made in a stockholders' report that Cirtex had an $80,000 profit in 1988. In his report, given at a stockholders' meeting on June 10, 1989, Mr. Yei stated:

> For 1989, our new philosophy becomes more conservative. The objective is to give stockholders some returns, especially those who had invested for more than three years. * * * If we can maintain a profit level at 10-15%, our stock [price] per share shall have a market value between $2.00 to $3.00.

In any event, Fink contemplated that no loss deduction is available to a controlling shareholder who voluntarily surrenders a portion of his stock "before the corporation fails". Commissioner v. Fink, 483 U.S. at 98. Accordingly, respondent's disallowance of the claimed $60,000 capital loss is sustained.

Issue 2. Wage Income

Petitioners reported combined wages of $84,000 from Cirtex in 1989. They contend that $45,000 of the $84,000 reported as wages represent the repayment of loans they made in 1986 and 1989. In the alternative, they claim entitlement to a $45,000 bad debt deduction under section 166. Respondent contends that the $45,000 in payments that petitioners made to Cirtex constitute capital contributions, not loans, and that the entire $84,000 constitutes wages as reported on petitioners' 1989 return.

Petitioners claim they advanced Cirtex a total of $40,000 in 1986 and $5,000 in 1989. According to petitioners, these payments

were made because the company had cash flow problems. The payments made in 1986 are evidenced by 4 demand notes; the payment made in 1989 is not evidenced by any note. Mrs. Yei's notation on one of the 1986 promissory notes states, "treat it [the amount of the payment] as paid in capital". Mrs. Yei testified that the payments were treated as capital, at the recommendation of the corporation's outside accountant, in order to make Cirtex's financial statements "look better".

Cirtex treated the $84,000 paid to petitioners as salaries, and reported such amount on Forms 940 and 941 as business expenses.

We find that the $84,000 petitioners received from Cirtex was wage income. Indeed, the wage amount in 1989 was in line with the amount reported in 1988 ($83,539).

We now turn to petitioners' alternative position. Section 166 permits as a deduction any debt that becomes worthless within the taxable year. Only a bona fide debt can be deducted. A bona fide debt is a debt that arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. A contribution of capital is not considered a debt for section 166 purposes. Sec. 1.166-1(c), Income Tax Regs. Whether a transfer of money creates a bona fide debt depends upon the intent of the parties involved in the transaction. Delta Plastics Corp. v. Commissioner, 54 T.C. 1287, 1291 (1970).

Petitioners failed to prove that the $45,000 they transferred

to Cirtex in 1986 and 1989 was intended to or did create a bona fide debt Cirtex owed them. The promissory notes by themselves are insufficient to prove the existence of a bona fide debt, especially in view of Mrs. Yei's notation on one of the notes that it is to be treated as capital and her testimony to a similar effect. Moreover, we are mindful that Cirtex's corporate returns failed to include any loans to shareholders in the appropriate space. We conclude that the $45,000 constitutes a contribution by petitioners to the capital of Cirtex and is not allowable to petitioners as a bad debt deduction.

Issue 3. Dividend Income

Petitioners claim they are entitled to an $18,241 deduction in 1989 to offset a distribution from Cirtex that they contend was erroneously reported as a dividend on their 1988 return. Petitioners' reasoning with respect to this issue is difficult to comprehend.

As best we can understand petitioners, they received an $18,241 payment from Cirtex in 1988 and reported it as a dividend on their return for that year. They now contend that Cirtex did not have earnings and profits in 1988 and should not have paid a dividend, even though Mr. Yei stated at the stockholders' meeting that the company had profits of $80,000 that year.[3] Petitioners argue that the payment Cirtex made was funded by a capital

---

[3]  Petitioners claim that the $80,000 referred to at the meeting was earnings before depreciation.

contribution from Albert Chang, which they now apparently claim was improper.  See infra note 2.

Whether the 1988 payment was properly reported in 1988 is outside our jurisdiction in this case.  We do not have jurisdiction to consider a claimed overpayment on petitioners' 1988 return because the notice of deficiency at issue covers only 1989.  See sec. 6213(a); Commissioner v. Gooch Milling & Elevator Co., 320 U.S. 418 (1943).  Petitioners' reporting of the payment as a dividend for 1988 does not entitle them to an offset against their income for 1989.

Issue 4.  Bad Debt Deductions

Petitioners claim they are entitled to bad debt deductions in 1989 for:  (a) A $9,100 payment they made to Albert Chang on behalf of Cirtex to purchase his Cirtex shares; (b) a $1,500 loan they made to Cirtex to permit that company to purchase shares of its stock owned by Ba Cac Luong; (c) a $4,000 loan they made on Cirtex's behalf to Esstec; and (d) $1,500 reported as income from the sale of an automobile that they never received.

The basis for the first two items involves the purchase of Cirtex stock from two separate investors (Albert Chang and Ba Cac Luong).  Mr. Yei testified that he felt responsible for any losses the investors sustained and agreed to repurchase personally, or have the company repurchase, the stock when an investor complained that the value of the stock fell below the original purchase price.

As best we can determine from the record, Mr. Chang demanded

that Cirtex purchase his Cirtex shares after his employment with the company terminated. Mr. Chang's accountant advised Mr. Chang that Cirtex improperly used his $100,000 investment to pay a dividend to existing stockholders and to purchase shares held by some of them. Cirtex agreed to purchase from Mr. Chang the Cirtex stock he owned. Mr. Chang received cash and a corporate note for his Cirtex stock. Because of a lack of corporate funds, petitioner paid Mr. Chang, in 1989, $9,100 that Cirtex owed him pursuant to the corporate note.

Petitioners were not legally obligated to make any payments to Mr. Chang on behalf of Cirtex. They were neither the makers nor the guarantors of the note obligation. A corporation's business is distinct from that of its stockholders; here, petitioners' payment to Mr. Chang helped to discharge the obligation of Cirtex to Mr. Chang and was in the nature of a capital contribution. Petitioners have not shown that the payment created a bona fide debt from the corporation to petitioners. Thus, petitioners' claim of entitlement to a bad debt deduction with respect to the payment to Mr. Chang is incorrect.

Petitioners claim that they advanced Cirtex $1,500 in July 1989 in order for the company to purchase 2,000 shares of its stock held by Ba Cac Luong. The only evidence with respect to the $1,500 is a piece of paper containing a photostat of a checkbook register and a handwritten statement "7/12/89 paid to Ba Cac Luong for $3,500 for Cirtex--$1,500 was never reimbursed." There is no

indication that any of the $3,500 was a loan from petitioners to Cirtex. Assuming that the $3,500 was a loan, and not a capital contribution, petitioners offered no evidence to prove that the unreimbursed portion ($1,500) became worthless. Petitioners failed to satisfy their burden of proof establishing the existence of the claimed loan as well as the year in which the purported loan became worthless. They are thus not entitled to a bad debt deduction with respect to this purported loan.

Petitioners claim they paid $4,000 to Esstec, a nonincorporated business, on behalf of Cirtex. The owner of Esstec, Stephen Williams, also was a Cirtex employee and had rented space in Cirtex's building. Cirtex did not provide a note to evidence petitioners' payment on its behalf. The only evidence presented was petitioners' check, dated July 11, 1988, made payable to Esstec. The notation at the bottom of the check stated "Esstec loan". Mrs. Yei testified that Esstec went out of business in 1989, but her testimony in this regard was not credible. Petitioners did not satisfy their burden of proof to establish the identity of the borrower, the existence of a loan, or the year in which the purported loan became worthless. Thus, they are not entitled to a bad debt deduction with respect to this purported loan.

Petitioners sold an automobile to Stephen Williams for $2,000 in 1988, reporting $500 in income on their 1988 return and $1,500 in income on their 1989 return. Petitioners claim that they did

not receive the $1,500 from Mr. Williams in 1989 and thus are entitled to a bad debt deduction. Mrs. Yei testified that she did not ask her husband about the receipt of the payment until preparing their petition, which was filed with the Court on October 18, 1993. We accept Mrs. Yei's testimony and find that petitioners erroneously reported $1,500 as income on their 1989 return. Correction of this mistake should be made in the Rule 155 computation.

Issue 5. Unreimbursed Expense

Mr. Yei gave 1,000 shares of his Cirtex stock to Katherine Cunningham, Cirtex's quality control manager, as a bonus. Allegedly, the stock was given, rather than cash, due to Cirtex's cash flow problems. When Ms. Cunningham left the company's employ in 1989, petitioners paid her $1.60 per share for the stock, again due to the fact that Cirtex did not have funds to purchase the stock and Mr. Yei's perceived personal obligation to compensate Ms. Cunningham with cash. Petitioners contend they are entitled to a deduction for the $1,600 given Ms. Cunningham as an unreimbursed business expense under section 162. Respondent contends that the Cirtex stock petitioners acquired is a capital asset for which petitioners are not entitled to a deduction.

Section 162 permits the deduction of ordinary and necessary expenses paid or incurred in carrying on a trade or business. Bonuses to employees will constitute allowable deductions from gross income when such payments are made as additional compensation

for services actually rendered by the employees. Sec. 1.162-9, Income Tax Regs. Ms. Cunningham was a Cirtex employee and rendered services to the company, not to petitioners. Although petitioners were corporate officers, their personal payment of an employee bonus would not be an ordinary and necessary expense of their office. See Grossman v. Commissioner, T.C. Memo. 1974-269. Further, petitioners received stock from Ms. Cunningham in exchange for their $1,600 payment. Accordingly, we hold that petitioners may not deduct the cost of the stock purchase.

Issue 6. Solectron Stock Basis

On their 1989 return, petitioners reported a $10,000 basis in their Solectron stock. They now contend that their basis in the Solectron stock, which Mr. Yei sold for $99,990 in 1989, should be increased from $10,000 to $29,000 to reflect $19,000 in payments petitioners made to family members. As best we can understand petitioners' position, they claim that Mr. Yei's father in effect owned the Solectron stock because he loaned the money for its purchase to petitioners. They further claim that the $19,000 in payments to family members represents part of the cost of their debt to Mr. Yei's father. Respondent takes the position that the basis of petitioners' stock remains $10,000, as reported on petitioners' tax return.

There is no question but that the cost of the stock is $10,000. The stock was issued to Mr. Yei, and he used the stock to secure a lease on the building Cirtex used. Mr. Yei's father did

not own the stock.

The basis of property acquired through purchase generally is its cost. Sec. 1012; sec. 1.1012-1(a), Income Tax Regs. There is nothing about the $19,000 in payments to family members to suggest that such payments be allocated to the cost basis of the stock. The $19,000 was paid to family members who had no ownership interests in the Solectron stock. Accordingly, we hold that the Solectron stock basis is $10,000, as reported on petitioners' tax return.

Issue 7. Accuracy-Related Penalty

Respondent determined an accuracy-related penalty under section 6662(a). Section 6662 imposes a penalty equal to 20 percent of the portion of the underpayment that is attributable to negligence or disregard of rules or regulations. Sec. 6662(a), (b)(1).

Negligence is defined as the failure to exercise the due care that a reasonable, prudent person would exercise under similar circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Neely v. Commissioner, 85 T.C. 934, 947 (1985). A taxpayer has the burden of proving that respondent's determination is in error. Luman v. Commissioner, 79 T.C. 846, 860-861 (1982).

Petitioners each have graduate college degrees. Mrs. Yei, who prepared petitioners' 1989 tax return, while not a C.P.A., passed the written portion of the C.P.A. examination. Mrs. Yei testified

that their income tax returns contain "so many mistakes" that she did not want them admitted into evidence.  Her casual approach to tax return preparation is illustrated by her testimony concerning the Cirtex corporate returns:  "There's a lot of hiding figure, or hiding fact elicited in this return. * * * we have to file, so we file something."

Based on the record before us, we conclude that petitioners were negligent and disregarded rules or regulations in preparing their 1989 return.  Accordingly, petitioners are liable for the accuracy-related penalty on the entire underpayment for 1989.

To reflect concessions by respondent, as well as the foregoing,

Decision will be entered under Rule 155.