T.C. Memo. 1997-161


UNITED STATES TAX COURT


JAMES P. DE OCAMPO AND MARLA L. DE OCAMPO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11624-94.                    Filed April 1, 1997.


<u>A. Nathan Zeliff</u>, for petitioners.[1]

<u>Patricia Anne Golembiewski</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


JACOBS, <u>Judge</u>:  Respondent determined a $38,819 deficiency for

1989 and a $7,764 accuracy-related penalty under section 6662(a).

The issues for decision are:  (1) Whether petitioners may

_____

[1]    Mr. Zeliff represented petitioners at the trial of this
case and filed posttrial briefs on their behalf.  Thereafter, he
filed a motion to withdraw as counsel for petitioners which was
granted on Oct. 7, 1996.

defer recognition of gain from the sale of their former principal residence under section 1034(a) when title to their new residence was acquired by the parents of petitioner James De Ocampo, and (2) whether petitioners are liable for an accuracy-related penalty under section 6662(a).

All section references are to the Internal Revenue Code for the year under consideration. All Rule references are to the Tax Court Rules of Practice and Procedure.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioners, husband and wife, resided in Livermore, California, at the time they filed their petition. They filed a joint Federal income tax return for 1989, the year under consideration. The return shows Mr. De Ocampo's occupation as a lithographer, and Mrs. De Ocampo as self-employed, having a printing business. Their total combined income for 1989 was $26,780.

On October 14, 1989, petitioners signed a deposit-receipt and purchase contract for the purchase of their current residence at 1007 Montclair Court in Livermore (Montclair property) for $300,000. At the time, petitioners resided at 5017 Curtis Street in Freemont, California (Curtis property). After they signed the contract, petitioners encountered credit and financial problems in

obtaining a mortgage. Petitioners' real estate agent suggested Mr. De Ocampo's mother, Rosita De Ocampo, and father, the late Felicismo De Ocampo, purchase the Montclair property because they had a better credit rating than petitioners and could obtain a mortgage on more favorable terms.

On December 2, 1989, Mr. De Ocampo's parents signed a deposit-receipt and purchase contract for the purchase of the Montclair property for $300,000. The contract provided that Mr. De Ocampo's parents were purchasing the property for their own account, and that the contract was subject to the termination of the agreement signed by seller and petitioners on October 14, 1989.

Mr. De Ocampo's parents obtained a loan from Home Savings of America (Home Savings) to finance the purchase of the Montclair property. Petitioners and Mr. De Ocampo's parents agreed that petitioners would live in the Montclair property and pay all mortgage, insurance, property tax, and utility bills for the residence. However, there was no written agreement to that effect, and none of the documentation involving Home Savings, the seller, or any other party indicated that Mr. De Ocampo's parents purchased the Montclair property on behalf of petitioners, or that petitioners were the owners of the property.

Loan statements and property tax bills were mailed to Mr. De Ocampo's parents. When a bill arrived in the mail, Mr. De Ocampo's mother would telephone petitioners, and they would stop at the residence of Mr. De Ocampo's parents to obtain the bill. When

petitioners were late with payments of insurance premiums and property taxes on the Montclair property, Home Savings added the delinquent amounts to the balance of the mortgage held by Mr. De Ocampo's parents. Delinquency notices were mailed to the residence of Mr. De Ocampo's parents.

Petitioners claimed home mortgage interest deductions on their tax return for the Montclair property from the time it was purchased by Mr. De Ocampo's parents.

Petitioners sold the Curtis property to Mr. De Ocampo's parents on December 28, 1989, for $215,000. Mr. De Ocampo's parents purchased the Curtis property so that another son, Richard, could live there. Mr. De Ocampo's parents obtained the mortgage on the Curtis property, and Richard made the mortgage payments.

Petitioners received $91,301.52 from the escrow agent on December 28, 1989, with respect to the sale of the Curtis property. Petitioners used a portion of the sale proceeds to purchase an $80,000 cashier's check that was used as a deposit with respect to the purchase of the Montclair property. The purchase of the Montclair property closed on December 29, 1989.

On January 14, 1992, Mr. De Ocampo's parents transferred title to the Montclair property to petitioners. A notation on the deed shows that the transfer was treated as a gift. On July 28, 1992, petitioners transferred a one-half interest in the Montclair property back to Mr. De Ocampo's parents because petitioners were told by a friend that the transfer to them from Mr. De Ocampo's

parents would cause the entire mortgage to become due. Petitioners did not consult with an attorney with regard to any of the aforementioned transactions. On November 5, 1993, Home Savings informed petitioners that it had changed the name on the loan from Mr. De Ocampo's parents to petitioners.

Petitioners informed their tax return preparer that they did not hold title to the Montclair property. On Form 2119 (Sale of Your Home) attached to their 1989 return, petitioners reported the sale of the Curtis property; the selling price was shown to be $215,000, and expenses of sale as $477. Petitioners' basis in the property was shown as $65,736. Petitioners deferred recognition of the gain ($148,787) pursuant to section 1034.

OPINION

Issue 1. Sale of Residence

Section 1034(a) permits deferral of gain on the sale of a taxpayer's principal residence (old residence) if other property is purchased and used by the taxpayer as a new principal residence within a period beginning 2 years before the date of the sale and ending 2 years after such date. Gain is recognized only to the extent that the taxpayer's adjusted sales price of the old principal residence exceeds the cost of purchasing the new residence. Id.

Petitioners contend that they purchased the Montclair property using Mr. De Ocampo's parents as agents, thus satisfying the requirement of section 1034 that the taxpayer purchased a new

principal residence within 2 years of the sale of the former residence. Respondent argues that the Montclair property was purchased by Mr. De Ocampo's parents, not petitioners, and therefore section 1034 is not applicable.

Section 1034 has been strictly construed. See, e.g., Boesel v. Commissioner, 65 T.C. 378, 390 (1975); Lokan v. Commissioner, T.C. Memo. 1979-380; Bazzell v. Commissioner, T.C. Memo. 1967-101. Maintaining continuity of title is the key to receiving nonrecognition treatment under section 1034. Starker v. United States, 602 F.2d 1341, 1351 (9th Cir. 1979); Allied Marine Sys., Inc. v. Commissioner, T.C. Memo. 1997-101; see also Edmondson v. Commissioner, T.C. Memo. 1996-393. In Marcello v. Commissioner, 380 F.2d 499 (5th Cir. 1967), affg. on this issue T.C. Memo. 1964-299, the taxpayers, husband and wife, sold their principal residence and moved into a new principal residence, legal title to which was acquired by the husband's mother. In an unrecorded affidavit, the mother stated that she held title to the residence for convenience only, that the residence was purchased by and for her son, who paid the purchase price, and that she would convey the property to him whenever required to do so, for no consideration. The mother held the mortgage on the property, but her son made the payments. The Court of Appeals for the Fifth Circuit agreed with this Court that the taxpayers did not qualify under section 1034 for deferral of gain realized from the sale of their former

residence.  The Court of Appeals stated:

> Congress intended to enable homeowners to use the sales proceeds from a sale of the old residence for buying their own home.  The purpose of Section 1034 was not to permit a taxpayer to re-invest the proceeds from the sale of his home in the home of another person without recognizing for federal income tax purposes the gain realized by the sale.  The clear statutory language requires that a new residence be purchased and used by the taxpayer.  That the residence must be owned by the taxpayer is made evident by the exception in subsection (g) of Section 1034 permitting either the husband or the wife to hold the residence in his or her name.  If a third party owns the residence, the purchase requirements are not met.

Id. at 502 (fn. refs. omitted).

In May v. Commissioner, T.C. Memo. 1974-54, the taxpayer received proceeds from the disposition of her principal residence pursuant to a divorce settlement.  She gave a portion of the proceeds to her daughter, who used the money as a downpayment on three houses, and the taxpayer spent some of the proceeds on improvements to her daughter's houses.  The taxpayer advanced the money to her daughter so that the taxpayer's ex-husband would not know the taxpayer's whereabouts or what property was acquired with the funds.  She also did not want the property to become part of her estate.  The taxpayer claimed that the gain from the sale of her interest in her former residence should be deferred under section 1034 to the extent the proceeds were used to acquire additional residential property and make improvements.  We disagreed and held that the taxpayer was not entitled to deferral of gain because the property was purchased by her daughter, who

took the deed in her name and signed the escrow instructions, the note for the balance of the purchase price, and a deed of trust securing the note.

In Boesel v. Commissioner, supra, the taxpayers sought to add to the purchase price of their new principal residence the discounted present value of future ground lease payments for purposes of computing their cost of purchasing a new residence for the nonrecognition provisions of section 1034. In that case, the taxpayer-husband was transferred by his employer from New York to California. As a result of the transfer, the taxpayers purchased a home on land subject to a long-term lease. In computing the cost of the new residence, the taxpayers included the capitalized value of their future payments under the land lease. We therein stated that section 1034 permits nonrecognition of gain "only to the extent that a taxpayer continues to hold title in fee simple to property which is occupied as his principal residence". We held that the taxpayers were not entitled to include as part of the purchase price of their new residence the cost of the particular leasehold interest involved in that case. Id. at 386. We further stated:

> Embodied within the statutory language and authorities * * * requiring continuity of record title as a precondition to nonrecognition of gain under section 1034 is a desire to prevent taxpayers from enjoying the benefits of tax deferral (current nonrecognition) while placing themselves in a position (as nontitleholders) to escape future recognition altogether. Section 1034 was created to assist those taxpayers compelled to sell their old residences, due to family expansion or shifts in

places of employment, who desire to reinvest equal or greater funds in new residences, <u>as legal owners of record</u>. * * *

<u>Id.</u> at 388.

Here, Mr. De Ocampo's parents purchased the Montclair property and obtained a loan to finance the purchase. They (not petitioners) were the legal owners of record, irrespective of petitioners' payment of any acquisition or maintenance costs and use of the property. Petitioners have failed to establish that Mr. De Ocampo's parents were acting as petitioners' agents in purchasing the Montclair property. Mr. De Ocampo's parents acquired the Montclair property in their own names and for their own account, as they represented in the purchase contract. They obtained the mortgage using their personal credit, not that of a disclosed or undisclosed principal. Although we believe Mr. De Ocampo's parents' purchase of the property was done as a favor to petitioners, the fact remains that it was the parents who made the purchase.

The transfer of the Montclair property from Mr. De Ocampo's parents to petitioners occurred on January 14, 1992. This was more than 2 years after the sale of petitioners' Curtis property in late December 1989; accordingly, we need not decide whether such a transfer constitutes a "purchase" within the meaning of the statute.

Petitioners did not establish that they satisfied the requirements of section 1034. While we are sympathetic to

petitioners' plight, having legal title to the Montclair property in the names of Mr. De Ocampo's parents could permit the sale of the property to a third party, and perhaps allow petitioners to avoid payment of tax on the gain from the sale of the Curtis property.

To summarize, petitioners did not meet the purchase requirement of section 1034. See Marcello v. Commissioner, 380 F.2d at 502 n.7. Accordingly, we hold that petitioners are required to recognize gain from the sale of their Curtis property in 1989.

Issue 2.  Accuracy-Related Penalty

Respondent determined an accuracy-related penalty pursuant to section 6662(a) for petitioners' 1989 tax year.  Section 6662 imposes a penalty equal to 20 percent of the portion of an underpayment of tax that is attributable to any substantial understatement of tax. Sec. 6662(a) and (b)(2). An understatement of tax is substantial when it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).  The amount of an understatement will be reduced if a taxpayer has substantial authority for the way an item was treated, or if the facts that affect the item's tax treatment are adequately disclosed in the return.  Sec. 6662(d)(2)(B).  A taxpayer has the burden of proving that respondent's determination of an addition to tax is in error.  Luman v. Commissioner, 79 T.C. 846, 860-861 (1982).

The accuracy-related penalty does not apply to any portion of

an underpayment if there was reasonable cause for such portion and the taxpayer acted in good faith. Sec. 6664(c)(1). Such a determination is made by taking into account all facts and circumstances, including the experience, knowledge, and education of the taxpayer and reliance on a professional tax adviser. Sec. 1.6664-4(b)(1), Income Tax Regs.

With regard to the instant case, petitioners' real estate agent suggested that Mr. De Ocampo's parents purchase the Montclair property and obtain a mortgage because petitioners had credit problems. Petitioners informed their tax return preparer that they did not hold title to the Montclair property. They relied on the preparer to properly report the transaction, and indeed the transaction was reported on Form 2119. Petitioners made mortgage, insurance, and tax payments on the Montclair property, as though they were the owners. Under the facts and circumstances presented herein, we believe that petitioners acted in good faith and with reasonable cause in reporting the transaction. We therefore hold that petitioners are not liable for the accuracy-related penalty.

To reflect the foregoing,

Decision will be entered for respondent as to the deficiency, and for petitioners as to the accuracy-related penalty under section 6662(a).